# EXHIBIT E

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    JAN 2 3 2007

In re:    Givens, T-86266
California Substance Abuse Treatment Facility and
State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

IAB Case No.: 0607287          Local Log No.: SATF 06-3872

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner B. Sullivan, Staff Services Manager I. _All submitted documentation and supporting arguments of the parties have been considered.

I    APPELLANT'S ARGUMENT: It is the appellant's position that the CDCR has failed to provide adequate medical treatment for his vision and mobility impairments, which are both qualifying conditions under the Americans with Disabilities Act (ADA). The appellant claims that CDCR medical staff has instituted a policy of inaction in regards to providing medical treatment for the appellant in retaliation for his filing appeals, ADA requests, and litigation. The appellant requests an examination by an ophthalmologist and an optometrist other than Dr. Garcia or any other CDCR agent for vision problems. He asks to have a magnetic resonance imaging (MRI) of his knee and an evaluation by a surgeon other than a CDCR agent. The appellant finally asks for a determination as to whether he is permanently mobility impaired and to cease and desist all omissions in regards to providing adequate medical care for the appellant.

II    SECOND LEVEL'S DECISION: The reviewer found that on October 16, 2006, Dr. Beregovskaya attempted to evaluate the appellant regarding the health care complaints raised in this appeal. The appellant's argumentative and unpleasant behavior was of little assistance in completing the appeal process. Documentation in the Unit Health Record reveals the appellant's vision has been appropriately evaluated by Dr. Garcia on February 1, 2006. Dr. Beregovskaya found no medical necessity to refer the appellant to see an ophthalmologist. On May 15, 2006, Dr. Kachare submitted a routine CDC Form 7243, Physician Request for Services, for the appellant to receive an MRI of the right knee. The appellant received the MRI on October 25, 2006. The appellant's knee has previously been evaluated by two different orthopedic surgeons. There is no medical reason for evaluation by another orthopedic surgeon at present. Furthermore, the appellant's condition has been evaluated and at this time he does not meet the criteria to be classified as mobility, hearing, vision, and/or speech impaired according to the Armstrong Remedial Plan (ARP). Based on the above information, there is no evidence to support the appellant's allegation that his health care is being ignored or that he has been a victim of cruel and unusual punishment due to action or inaction by medical staff at the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF). The appellant's health care issues will continue to be addressed adequately and appropriately by medical staff at SATF.

III    DIRECTOR'S LEVEL DECISION: Appeal is denied.

A.    FINDINGS: At the Director's Level of Review (DLR) the appellant continues to state that CDCR has failed to provide adequate medical services and they are in violation of California Code of Regulations, Title 15, Section (CCR) 3350. He says that CDCR has no intention of providing the appellant with prescription eyewear or an evaluation by the surgeon who performed the last surgery on his knee. The examiner notes that the appellant's vision concerns and his issues with Dr. Garcia have previously been addressed in Appeal Log #SATF 05-4450 and with a response from the Inmate Appeals Branch (IAB), Log# 0512874. It was stated in that response that Dr. Garcia did not order bifocals for the appellant on February 1, 2006, but ordered "readers" from the stock on hand. Dr. Garcia determined the appellant's vision impairment could be accommodated with reading glasses from the stock at hand. Reading glasses are corrective lenses and can assist the appellant with his vision impairment.

GIVENS, T-86266
CASE NO. 0607287
PAGE 2

Medical staff at SATF have also determined that the appellant does not require an examination by another orthopedic surgeon as his right knee has been evaluated by two different orthopedic surgeons. The appellant asks for physicians and examinations by staff other than CDCR medical staff. Pursuant to the California Code of Regulations, Title 15, Section (CCR) 3354(c) "Private Consultants. Health care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff as follows: An inmate or an inmate's responsible guardian or relative, or an attorney or other interested person wanting the inmate examined by a private physician, shall submit a written request to the institution head. The institution head shall, after consulting with the facility's chief medical officer grant the request unless convinced that specific case factors warrant denial. The fact of and reasons for such denial, and notice of the right to appeal the decision in writing to the director, shall be documented and given to the inmate or the person requesting the outside health care service. Costs of such private consultations or examinations shall be paid by the inmate or the person requesting the service." The appellant has an avenue to pursue examinations by private consultants if he chooses.

The appellant states that his vision and mobility concerns qualify under the ADA. Medical staff at SATF have also determined that the appellant's vision and mobility concerns do not meet the criteria as a disability according to the ARP. The appellant has been provided with numerous medical appointments, specialist appointments, diagnostic studies, surgeries, eye examinations, medications, and accommodations. The appellant has not presented a compelling argument to warrant modification of the decision reached by the institution. The appellant is encouraged to cooperate with health care staff to ensure the proper diagnosis and treatment of his health care problems.

**B.  BASIS FOR THE DECISION:**
ARP: ARPI, ARPII.A, ARPII.D.4, ARPII.F
CCR: 3085, 3350, 3354

**C.  ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SATF
        Health Care Manager, SATF
        Appeals Coordinator, SATF
        Medical Appeals Analyst, SATF

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| SATF · A | O6.3872 | 18. ADA |

*NOTE:* THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| Givens, F | T-85265 | Voc | 0800 -1600 | A3-121/Low |

   In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

   You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

   Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

   If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

   To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

   ~~Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of~~ rendered on this request form.

   If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:

Mobility and vision impaired.

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?

Central File. Medical report (Mercy Hospital in Bakersfield Ca).
Issue: Glasses Break addressed & Demanded. #SATF.D.05-0458.
Note: "1445" L.Bwk | Law Tier. Surgery addressed Denied Denied #SATFB.05-0255)

DESCRIBE THE PROBLEM: The medical department of CDCR has failed to provide adequate medical treatment for appellant's vision and mobility impairments, which are both qualifying conditions under the ADA (42 USC §12012 et seq.). Appellant asserts that CDCR's medical department has instituted a policy of "inaction" in regards to providing medical treatment for the appellant in retaliation for his filing appeals, ADA request and litigation.

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED? Examination by an ophthalmologist and optometrist other than Dr. Garcia or any other CDC agent for vision problems. MRI of appellant's knee and evaluation by surgeon other than CDC agent. Determination if appellant is permanently mobility impaired. Cease and desist all omissions in regards to providing adequate medical care for appellant.

INMATE/PAROLEE'S SIGNATURE                         9-28-06
                                                    DATE SIGNED

RECEIVED
MED. APPEALS

RECEIVED
OCT -4 2006
MED. APPEALS

CSATF APPEALS
OCT 03 2006

REASONABLE MODIFICATION OR ACCOMMODATION REQUEST
CDC 1824 (1/95)

| REVIEWER'S ACTION |
|---|

**TYPE OF ADA ISSUE**

DATE ASSIGNED TO REVIEWER: 10-3-06

DATE DUE: 10-25-06

☐ PROGRAM, SERVICE, OR ACTIVITY ACCESS (Not requiring structural modification)

    ☐ Auxiliary Aid or Device Requested

    ☒ Other _REFERRAL, DIAGNOSTIC STUDY, NO RETALIATION_

☐ PHYSICAL ACCESS (requiring structural modification)

**DISCUSSION OF FINDINGS:** _____ SEE ATTACHED. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_10-16-06_                                O. BEREGOVSKAYA, MD AND
                                          G. MILLER, SSA

DATE INMATE/PAROLEE WAS INTERVIEWED        PERSON WHO CONDUCTED INTERVIEW

**DISPOSITION**

☐ GRANTED    ☐ DENIED    ☒ PARTIALLY GRANTED

**BASIS OF DECISION:** _____ SEE ATTACHED. _____

_____

_____

_____

_____

_____

_____

**NOTE:** *If disposition is based upon information provided by other staff or other resources, specify the resource and the information provided. If the request is granted, specify the process by which the modification or accommodation will be provided, with time frames if appropriate.*

| DISPOSITION RENDERED BY: (NAME) G. MILLER | TITLE MEDICAL APPEALS ANALYST | INSTITUTION/FACILITY CSATF |
|---|---|---|

| APPROVAL |
|---|

ASSOCIATE WARDEN'S SIGNATURE  G. Martin C#SATF

DATE SIGNED 10/23/06

DATE RETURNED TO INMATE/PAROLEE  OCT 24 2006

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**                    Location: Institution/Parole Region      Log No.              Category
**APPEAL FORM**
CDC 602 (12/87)                       1.  ___CSATF/SP___          1. _SATF-A-06-03872_    _____

                                      2.  _____         2. _____

You may appeal any policy, action or decision, which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Givens , Francois | T-86266 | Voc (Ele) | A3-121Low |

A. Describe Problem: _____

_____

_____

_____

_____

_____

_____

If you need more space, attach one additional sheet.

_____

B. Action Requested: _____

_____

_____

Inmate/Parolee Signature: _____    Date Submitted: _____

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D.    FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/ Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.

RECEIVED
NOV -6 2006
MCD APPEALS

CDC Appeal Number:

First Level  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date Assigned: _____  Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____  RECEIVED  Title: _____  Date completed: _____

Division Head Approved: _____  NOV 03 2006  Returned

Signature: _____  Title: _____  Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Appellant is dissatisfied with the First Level ADA response. Appellant is still without prescription eyewear despite the fact that the appellant recieved a prescription from Dr. Garcia on 2-1-06, and vision continues to deteriorate.

Appellant has not recieved meaningful evaluation of his condition by the attending surgeon despite the fact that on 7-11-05, he order the appellant to return in (6) weeks for a follow up. (see attached).

Signature: _____  Date submitted: 10-29-06

Second Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 11-3-06  Due Date: 11-17-06

☒ See Attached Letter

Signature: _____  Date Completed: CSATF APPEALS

Warden/Superintendent Signature: _____ CP ___ 12/8/06  Date Returned to Inmate: DEC 1 2 2006

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____  Date Submitted: _____

For the Director's Review, Submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

☐ See Attached Letter

CDC 602 (12/87)  Date: _____

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



December 5, 2006

GIVENS, T86266
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Response
Log # SATF-A-06-03872

## ISSUE:

It is appellant's position on appeal that, "The medical department of CDCR has failed
to provide adequate medical treatment for appellant's vision and mobility impairments,
while are both qualifying conditions under the ADA (42 USC 12012 et. Seq.)
Appellant asserts that CDCR's medical department has instituted a policy of 'inaction'
in regards to providing medical treatment for the appellant in retaliation for his filing
appeals, ADA request and litigation."

At the First Level of Review (FLR) appellant requests, "Examination by an
ophthalmologist and optometrist other than Dr. Garcia or any other CDC agent for
vision problems. MRI of appellant's knee and evaluation by surgeon other than CDC
agent. Determination if appellant is permanently mobility impaired. Cease and desist
all omissions in regards to providing adequate medical care for appellant."

At the Second Level of Review (SLR) appellant adds, "Appellant is dissatisfied with
the First Level ADA response. Appellant is still without prescription eyewear despite
the fact that the appellant received a prescription from Dr. Garcia on 2/1/06, and vision
continues to deteriorate. Appellant has not received meaningful evaluation of his
condition by the attending surgeon despite the fact that on 7/11/06, he order the
appellant to return in (6) weeks for a follow up…"

## INTERVIEWED BY:

O. Beregovskaya, Medical Doctor and G. Miller, Staff Services Analyst

## REGULATIONS:

The rules governing this issue are taken from the California Code of Regulations
(CCR) Title 15, and the Department Operations Manual (DOM).

**California Code of Regulations (CCR) Title 15 Section 3350. (a)** – The department shall only provide medical services for inmates, which are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists.

**California Code of Regulations (CCR) Title 15 Section 3354(c) - Private Consultants.** Health care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff.

## ARMSTRONG REMEDIAL PLAN

### A. Qualified Inmate/Parolee

A "qualified inmate/parolee" is one with a permanent physical or mental impairment which substantially limits the inmate/parolee's ability to perform a major life activity. Major life activities are functions such as caring for one's self, performing essential manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

### B. Permanent Disability

A "permanent disability or impairment" is one which is not expected to improve within six months. Temporary impairments such as a broken leg or hernia operation do not constitute a permanent disability or impairment.

## SUMMARY:

Appellant was interviewed at the FLR on October 16, 2006.

Appellant's Unit Health Record (UHR) and FLR response have been reviewed. Appellant has received ongoing medical treatment for the medical conditions addressed in this appeal:

- September 30, 2003 – Appellant received eyeglasses mailed in from an outside vendor
- October 27, 2003 – Appellant received eyeglasses from the Prison Industry Authority (PIA)
- January 7, 2004 – Appellant was seen and examined by Dr. Smith, Orthopedic Surgeon. Consultation notes indicate appellant twisted his right knee months previously. An MRI completed on December 9, 2003 showed high grade tears of the lateral meniscus. Dr. Smith recommended arthroscopy of the knee.

GIVENS, T86266
APPEAL A-06-03872
PAGE 3

- April 2004 – Appellant underwent arthroscopy of the right knee
- June 23, 2004 – Appellant was seen and examined by Dr. Smith for follow-up services of right arthroscopy. Dr. Smith indicated appellant's incisions were healing nicely. Appellant has full range of motion and no effusion. Dr. Smith appellant receive a lower bunk housing accommodation and follow-up services in two to three months.
- December 1, 2004 – Appellant received eyeglasses from PIA
- February 1, 2005 – Appellant received MRI of the right knee
- March 28, 2005 – Appellant was seen and examined by Dr. Amirpour, Orthopedic Surgeon. A repeat arthroscopy was recommended
- July 11, 2005 – Appellant underwent another arthroscopy of the right knee by Dr. Amirpour
- July 25, 2005 – Appellant was seen and examined by Dr. Amirpour for follow-up services
- August 26, 2005 – October 4, 2005 – Appellant received Physical Therapy, twice a week in the Correctional Treatment Center
- February 1, 2006 – Appellant was seen and examined in the Optometry Clinic. Based on examination reading glasses were issued to appellant through the specialty clinic stock.
- May 8, 2006 – Appellant was seen and examined by Dr. Amirpour and a recommendation for a repeat MRI of the right knee.
- May 15, 2006 – Dr. Kachare orders MRI of the right knee
- October 16, 2006 – Appellant seen and assessed by Dr. Beregovskaya regarding the issues of this appeal. As stated in the FLR, another order for an MRI was placed.
- October 25, 2006 – MRI completed

Information obtained from appellant's UHR shows accommodations have been issued to appellant during the above timeframes via CDC 128C Health Services Chronos for medically indicated conditions (ex. Lower bunk / lower tier housing, use of crutches, and use of a cane).

Appellant has the option to request another medical opinion / evaluation be completed; however, according to the regulations and policies of the California Department of Corrections and Rehabilitation, appellant would be financially responsible for said request.

Based on the above information there is no medical indication for appellant to be referred to an Ophthalmologist, Optometrist, or Orthopedic Surgeon at this time. Appellant has received ongoing medical treatment, medications, accommodations, therapy, and referrals while incarcerated at CSATF/SP Corcoran. Furthermore, appellant's condition has been evaluated and at this time does not meet the criteria to

GIVENS, T86266
APPEAL A-06-03872
PAGE 4

be classified as mobility, hearing, vision, and/or speech impaired according to the Armstrong Remedial Plan.

## DECISION:

Your appeal is **PARTIALLY GRANTED.**  Appellant's request for an MRI has been granted.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.


E. FLORES, MD
Chief Medical Officer (Acting)

DATE

CSATF APPEALS
DEC 1 2 2006

Attachment ADA Log#SATF-A-06-03872
I/M givens, #T-86266  10-29-06

    Presented as an issue in this ADA request, appellant stated that CDCR's medical department has instituted a policy of inacyion in regards to providing medical treatment for the appellant, in retaliation for his filing appeals, ADA request and litigation. The submission of this ADA request was triggered after the appellant realized that CDCR has no intention of allowing the appellant to see an outside orthopedic specialist, or their own doctors for that fact, in order to properly evaluate his knee condition or to perform a meaningful eye examination by a qualified opthalmologist. "Physician Discharge Instructions" signed by Dr Amirpour at Mercy Hospital in Bakerfield, Ca., (Attachment 1) stated that the appellant was to return to the doctor in (6) weeks should his condition not improve in regards to his knee. On 8-22-05, chief medical officer P.McQuiness provided the appellant with a lower bunk/lower tier chrono and ordered, inter alia, physical therapy for the appellant (see First Level review, ADA Log# SATF-B-05-02351), but only performed a cursory evaluation of the appellant's knee on that day. At this time, the appellant was under the impression that he would see Dr Amirpour should his physical condition not improve upon termination of physical therapy. Physical therapy for the appellant was terminated around the begining of October 2005, however, the appellant did not return to Bakersfield at that time.

    While on the B-yard facility, appellant submitted several request for health care treatment, requesting a follow up evaluation of his knee. On 12-21-05, appellant submitted a request while incarcerated in Administrative segregation (Attachment 2), stating that he had not recieved a follow up since the 7-11-05 surgey. On 2-27-06, appellant was first seen for this request by A-yard physician Dr Kachare but, as noted on a health care service request dated 1-17-06 (Attachment 3), appellant's medical file was erroneously sent to the B-yard facility on this day, preventing the doctor from reviewing appellant's file. On 3-13-06, Dr Kachare informed the appellant that he would be recieving a follow up with Dr Amirpour, but also stated that if the doctor wanted an MRI he would request one personally.

    On 5-8-06, appellant was transported to Mercy Hospital, where Dr Amirpour assumed, according to the information sent to the doctor, that the appellant was a new patient with a new injury, and an X-ray was performed on the appellant's knee on that day. Appellant informed the doctor that he had previously perform surgey to correct lateral meniscus ligament damage, and an MRI, not an X-ray, would probably be essential in evaluating the condition of the appellant's knee. The doctor agreed and ordered the appellant to return with an MRI. On 5-15-06, Dr Kachare ordered an MRI. On 10-16-06, in an interview for this ADA request, Medical Appeals Analyst Gary Miller and A-yard physician Dr O.Beregovshaya informed the appellant that his appeal would be granted, in that he had already seen Dr Amirpour and Dr Kachare in May 2006, completely ignoring the fact that appellant still has not been evaluated by Dr Amirpour while in possession of a current MRI and subsequent ducats for the A-yard medical line on 8-25-06 and 9-27-06 had been canceled. The (2) interviewers also stated that it could take up to (8) months before the appellant would recieve an MRI. On or around 10-17-06, appellant filed a motion to join Analyst Miller in his federal civil rights action in the Eastern District Court, and to sever and proceed with all medical claims specified in his second amended complaint in that action. On 10-25-06, appellant recieved his MRI.

    As for appellant's vision problems, the situation is simple. On or around 11-10-05, appellant filed a ADA request (split into (2) log numbers: SATF-B-05-04450 and 04451) to address the loss of his bi-focals which had previously been provided by Dr Garcia. On 2-1-06, the appellant was examined by Dr Garcia for the appel(s), and provided the appellant with a prescription for regular prescription eyewear, upon appellant's request (see CDC224 prescription attached to this appeal by First level reviewer). Upon recieving the First level response to the request(s), the appellant noted that the interviewer had spoken with Dr Garcia, who stated that the appellant did not require prescription eyewear, and he would be able to see with regular reading glasses, which he had given to the appellant on 2-1-06 while appellant was waiting for his family to purchase eyewear with the prescriotion given to the appellant on 2-1-06. The appellant's vision has progressively deteriorated, causing problems with his handwriting and reading, with the constant irratated tearing appearing to be the source of appellant's vision problems. This does not appear to be an isolated incident of an allergy in one eye only, as stated by Dr garcia on 2-1-06. Appellant has diabetes and is concerned that if left uncorrected, his vision problems in his right eye will result in blindness.

X _____
Francois P. Givens, #T-86266
CSATF/SP A3-121Low
P.O. Box 5248 Corcoran, Ca., 93212
Appellant.

               - 1 of 1 -

Applicable Facts

Vision Problem(s) Appellant was recieved into CDCR on 4-1-03. Shortly thereafter, appellant complained of vision problems at SQSP (Log # SQ-03-1861?). On 5-30-03 appellant was transfered from SQSP to NKSP after being labeled a "medical problem" according to his counselor at NKSP. At NKSP, a CDC1824 ADA Request for prescription eyewear was granted (log #?). Before the appellant recieved the prescription eyewear, he was transfered to CSATF/SP.

Appellant has filed at least (3) appeals/ADA Requests at CSATF/SP addressing vision problems and prescription eyewear. After Dr Garcia provided his original inaccurate prescription in 2003, CSATF/SP has maintained that Dr Garcia has properly examined and evaluated the appellant, who now states that appellant does not need prescription eyewear. Around the latter part of 2005, the appellant informed Dr Garcia that he was having extreme vision problems in his right eye due to some type of infection which caused excessive tearing and blurring. Dr Garcia informed the appellant that he had an "allergy" in his right eye only. A yard practitioner Dr Kushner informed the appellant that his condition appeared to be "macular degeneration". In June 2006, specialists at the San Francisco County Jail facility recommended that the appellant see an "ophthalmologist" rather than an "optometrist" for his condition.

Mobility Problem(s) On or around 10-25-06, appellant tore the lateral meniscus in his right knee at SATF/SP. On 4-27-04, CTC Physician David G. Smith performed surgery on that knee. After surgery, appellant experienced "tracking" problems with the knee, and Dr Smith ordered physical therapy, which was cancelled prematurely. Appellant filed several appeals/ADA requests on this issue. An MRI performed in 2-2005 revealed that the appellant's knee was almost in the same condition as it was when he had his original pre-op MRI in 12-2003. Corrective surgery was performed on appellant's knee on 7-11-05 at Mercy Hospital in Bakersfield Ca. The attending surgeon (Dr Amirpour) also ordered physical therapy which was also prematurely cancelled. In June 2005, just before he had his second surgery, appellant filed US District Court (EDCal) Case # CV-F04-6288 AWI XLB-P, in which

(continued on back)

e named as defendants, inter alios, CSATF/SP Chief Medical Officer, CSATF/SP HCSD ACW atty Allison and Doctors Smith and Garcia. Since that time, CSATF/SP has removed, their 3-13swed appellant's lower tier/lower bunk chrono, removed a medical appliances (cane and nscription eyewear, failed to provide physical therapy and has failed to schedule an MRI as ordered by Dr Amirparor (Mercy Hospital) and Dr. Kachove (A-yard).

Problem  ☞ 42 USCS 12203 "Prohibition against Retaliation and Coercion" provides:

... "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter" El Mobility and vision problems are qualifying conditions under the ADA. Appellant asserts that as a direct result of his participation in litigation or filing grievances against CDCR's medical department, CDCR has implemented a policy of "inaction" in regards to addressing appellant's medical concerns. It has long been established that, pursuant to the US Const 8th Amendment prohibition against cruel and unusual punishment, prison authorities must provide prisoners with adequate medical care (Estelle v Gamble (1976) 429 US 97; Farmer v. Brennan (1994) 511 US 825). A local government entity may be held liable under 42 USC 1983 if it has a policy of "inaction" which amounts to a failure to protect constitutional rights ( Lee v. ity of Los Angeles (CA9 2001) 250 F3d 668. CDCR's continued failure to adhere to a federal consent decree ultimately led to District Court Judge Thelton E. Henderson appointing a federal receiver to monitor the medical department. On 8-23-06 and 9-27-06, appellant's ducats for "medical line" were both cancelled. He has not seen a doctor since his return to CSATF/SP from court on 7-25-06, despite submitting a medical request. Appellant asserts retaliation by CDCR's medical department for appellant's filing of litigation, appeals and ADA Requests.

x _____

Francois P. Givens, FT-86266

CSATF/SP A3-121Low

√13941653  J6-03-512
GIVENS, FRANCOIS T862         01-17-64/M
FC-1N        07-25-05

Guarded Care Outpatient Clinic

## PHYSICIAN DISCHARGE INSTRUCTIONS

AGE 41

CDC#: _____

Please check (√) State Prison:

| | | | |
|---|---|---|---|
| ☐ | CCI | Hirsch, Neil, MD | 661-822-4402, ext. 9752 | FAX: 661-823-5004 |
| ☐ | Wasco | Seager, Michael, MD | 661-758-8400, ext. 5908 | FAX: 661-758-7088 |
| ☐ | North Kern | Close, John, MD | 661-721-3345, ext. 5919 | FAX: 661-721-3124 |
| ☐ | Avenal | Davis, Ross, MD | 559-386-6042, | FAX: 559-386-9465 |
| ☐ | Pleasant Valley | Klarich, MD | 559-935-4900, ext. 5431 | FAX: 559-935-7081 |
| ☐ | Corcoran | Hasadsri, MD | 559-992-7326 | FAX: 559-992-6196 |
| ☐ | Lancaster | Fitter, J, MD | 661-729-2000, ext. 7012 | FAX: 661-729-6909 |
| ☐ | CMC | Meyers, Robert, MD | 805-547-7910 | FAX: 805-547-7513 |
| ☐ | SATF | Foster, Mani, MD | 559-992-7194 | FAX: 559-992-7104 |

DISCHARGE SUMMARY (Please see attached)

Diagnosis: _____

TX/PROCEDURE/SURGERY DONE: _____

Suggestions for Follow-up:

    Discharge to:

    ☐ No Follow-up

    ☒ Return in _6_ weeks for _If not improved._

    ☐ Consult Dr. _____ for _____

Additional Medications and Suggestions: _____

_____

_____ M.D.                    7-25-06
M.D. Signature                           Date

Please FAX this back to Guarded Care Outpatient Clinic at 661-638-2711 signed by CMO, if agreeable to above suggestions.

_____                          _____
CMO's Signature                          Date

ATTACHMENT 1

## HEALTH CARE SERVICES REQUEST FORM

**PART I: TO BE COMPLETED BY THE PATIENT**

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

REQUEST FOR:    MEDICAL ☐    PSYCHIATRY ☐    DENTAL ☐    PHARMACY ☐

NAME: Givens F            CDC #: T 86266    HOUSING: ASU A² 106

PATIENT'S SIGNATURE: _____    DATE: 12-21-05

THE REASON YOU ARE REQUESTING HEATLH CARE SERVICES. (DESCRIBE YOUR HEALTH PROBLEM AND HOW LONG YOU HAVE HAD THE PROBLEM.) Problems with knee after surgery 17-1-05. Have not recieved follow up

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

Date & Time Received: 12/21/05 #05    Received by: M Day RN

Date & Time Reviewed by RN:    Reviewed by: M

S:

O:  T:      P:      R:      BP:        WEIGHT:

A:

P:

E:

Seen 2/27/06 by md

APPOINTMENT SCHEDULED AS:    EMERGENCY ☐ (IMMEDIATELY)    URGENT ☐ (WITHIN 24 HOURS)    ROUTINE ☐ (7-10 WORKING DAYS)

REFERRED TO PCP: _____    DATE OF APPOINTMENT: 3/27/06

Completed by: _____    Name of Institution: _____

Print/Stamp Name        Signature/Title            Date & Time Completed

CDC 7362(A) (Rev. 2/02) – DRAFT PENDING APPROVAL

1/5

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| *A fee of $5.00 may be charged to your trust account for each health care visit.* |
| **If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.** |

REQUEST FOR:   MEDICAL ☑   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☐

NAME *Givens, F*                CDC NUMBER *T-86266*        HOUSING *A3-130Low*

PATIENT SIGNATURE

DATE *1-17-06*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) *Ligaments in knee feel damaged. Request MRI and follow-up evaluation with surgeon who performed 7-11-05 surgery. Cane to assist with ambulation. Showing chrono because of skin condition.*

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

Date / Time Reviewed by RN: 1/18/06 0640     Reviewed by: **C Bruns RN** MD line

S:                                Pain Scale:  1  2  3  4  5  6  7  8  9  10

O:   T:   *Per Kathy Allison's Request they would like to have the I/m Evaluated for his lower bunk and lower tier Chrono*

A:
P:
☐ See Nurse   *To see if it needs to be renewed. Was on A yard MD line 2/27/06 — noted moved to B yard*

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY ☐ (IMMEDIATELY) | URGENT ☐ (WITHIN 24 HOURS) | ROUTINE ☐ (WITHIN 14 CALENDAR DAYS) |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | 3/23/06 |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|---|---|---|

CDC 7362 (Rev. 03/04)     Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

ATTACHMENT 3

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212

Date:  October 16, 2006

GIVENS, F., CDCR# T86266
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

First Level Response
Log # SATF-A-06-03872

## ISSUE:

In the section entitled "Describe the Problem" of the CDCR 1824 at the First Level of Review, the appellant states "the medical department of CDCR has failed to provide adequate medical treatment for appellant's vision and mobility impairments, which are both qualifying conditions under the ADA (42 USC section 12012 et seq).  Appellant asserts that CDCR's medical department has instituted a policy of 'inaction' in regards to providing medical treatment for the appellant, in retaliation for his filing appeals, ADA request and litigation".

Applicable Facts:

Vision Problems) Appellant was received into CDCR on 4-1-03 shortly thereafter, appellant complained of vision problems at SQSP (Log #SQ-03-01861?).  On 5-30-03, appellant was transferred from SQSP to NKSP, after being labeled a 'medical problem' according to his counselor at NKSP. At NKSP, a CDC1824 ADA Request for prescription eyewear was granted (Log #?).   Before the appellant recieved the prescription eyewear, he was transferred to CSATF/SP.

Appellant has filed at least (3) appeals ADA Requests at CSATF/SP addressing vision problems and prescription eyewear.  After Dr. Garcia provided his original inaccurate prescription in 2003, CSATF/SP has maintained that Dr. Garcia has properly examined and evaluated the appellant, who now states that appellant does not need prescription eyewear.   Around the latter part of 2005, the appellant informed Dr. Garcia that he was having extreme vision problems in his right eye due to some type of infection which caused excessive tearing and blurring.  Dr. Garcia informed the appellant that he had an 'allergy' in his right eye only. A-yard practitioner Dr. Kachare informed the appellant that his condition appeared to be 'macular degeneration'.  In June 2006, specialists at the San Francisco County Jail facility recommended that the appellant see an 'ophthalmologist' rather that an 'ophtomotrist' for his condition.

GIVENS, F., CDCR# T86266
Log # SATF-A-06-03872
Page 2 .

Mobility Problems) On or around 10-25-06, appellant tore the lateral meniscus in his right knee at CSATF/SP. On 4-27-04, CTC Physician David G. Smith performed surgery on hurt knee. After surgery, appellant experienced 'tracking' problems with the knee, and Dr. Smith ordered physical therapy, which was cancelled prematurely. Appellant filed several appeals/ADA requests on this issue. An MRI performed in 2-2005 revealed that the appellant's knee was almost the same condition as it was when he had his original pre-op MRI in 12-2003. Corrective surgery was performed on appellant's knee on 7-11-05 at Mercy Hospital in Bakersfield, Ca. The attending surgeon (Dr. Amirpour) also ordered physical therapy which was also prematurely cancelled. In June 2005, just before he had his second surgery, appellant filed US District Court (EDCal) Case #CV-F04-6288 AWI DLB-P, in which he named as defendants, inter alios, CSATF/SP, Corcoran/SP Chief Medical Officer, CSATF/SP HCSD AW Kathy Allison and Doctors Smith and Garcia. Since that time, CSATF/SP has removed, their re-issued appellant's lower tier/lower bunk chrono, removed medical appliances (cane and prescription eyewear, failed to provide physical therapy and has failed to schedule an MRI as ordered by Dr. Amirpour (Mercy Hospital) and Dr. Kushner (A-yard)

Problem    42 USC section 12203 'Prohibition against Retaliation and Coercion' provides:    ...'No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation or hearing under this chapter.' Id. Mobility and vision problems are qualifying conditions under the ADA. Appellant asserts that as a direct result of his participation in litigation or filing, grievances against CDCR's medical deparment, CDCR has implemented a policy of 'inaction' in regards to addressing appellant's medical concerns. It has long been established that, pursuant to the US Const. 8th Amendment prohibition against cruel and unusual punishment, prison authorities must provide prisoners with adequate medical care (Estelle v. Gamble(1976) 429 US 97; Farmer v. Brennan (1994) 511 US 825). A local government entity may be held liable under 42 USC section 1983 if it has a policy of 'inaction' which amounts to a failure to protect constitutional rights (Lee v. City of Los Angles (CA9 2001) 250 F. 3d 668. CDCR's continued failure to a federal consent decree ultimately led to District Court Judge Thelton E. Henderson appointing a Federal receiver to monitor the medical department. On 8-25-06 and 9-27-06, appellant's ducats to 'medical line' were both cancelled. He has not seen a doctor since his return to CSATF/SP from court on 7-25-06, despite submitting a medical request. Appellant asserts retaliation by CDCR's medical department for appellant's filing of litigation, appeals and requests".

In the section entitled "What Specific Modification or Accommodation is requested?", the appellant requests "examination by an ophthalmologist and optometrist other than Dr. Garcia or any other CDC agent for vision problems. MRI of appellant's knee and evaluation by surgeon other than CDC agent. Determination if appellant is permanently mobility impaired. Cease and desist all omissions in regards to providing adequate medical care for appellant".

GIVENS, F., CDCR# T86266
Log # SATF-A-06-03872
Page 3

## INTERVIEWED BY:

The appellant was interviewed at the First Level of Review in the Facility A medical clinic by O. Beregovskaya, MD and G. Miller, SSA on October 16, 2006 at approximately 1110 hours. The appellant's CDCR number was verified and, after reviewing this appeal, the appellant recognized it as his writing.  As the interview commenced, the appellant almost immediately became aggressive and argumentative. His disposition did not further effective communication or help to conduct an accurate fact finding in this case.

## REGULATIONS:

The rules governing this issue are taken from the California Code of Regulations (CCR) Title 15, and the Department Operations Manual (DOM).

The California Code of Regulations (CCR) Title 15, Section 3084.1(d) states, "No reprisal shall be taken against an inmate or parolee for filing an appeal.  This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4."  There is no evidence in this case showing medical staff have attempted to retaliate against the appellant because he has filed appeals or civil litigation against staff at this institution.

The CCR Title 15, Section 3350(a) Provision of Medical Care and Definitions states "The Department shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care.  In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists.  Treatments for conditions which might otherwise be excluded may be allowed pursuant to section 3350.1(d)."  Medical staff are under no obligation to provide treatment as ordered by another institution or outside facility. Medical treatment for inmates at CSATF shall be based on the judgement of this institution's physicians that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists.

The CCR Title 15, Section 3354(c) states, "Private Consultants.  Health care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff as follows:  An inmate or an inmate's responsible guardian or relative, or an attorney or other interested person wanting the inmate examined by a private physician, shall submit a written request to the institution head.  The institution head shall, after consulting with the facility's chief medical officer grant the request unless convinced that specific case factors warrant denial.  The fact of and reasons for such denial, and notice of the right to appeal the decision in writing to the director, shall be documented and given to the inmate or the person requesting the outside health

GIVENS, F., CDCR# T86266
Log # SATF-A-06-03872
Page 4

care service.  Costs of such private consultations or examinations shall be paid by the inmate or the person requesting the service."

Neither the appeals process nor the CCR Title 15 allows inmates to demand a particular medication, diagnostic procedure, or course of treatment.  Only licensed medical professionals may provide treatment at this institution.

Neither the appeals process nor the CCR Title 15 allows inmates to self-diagnose their own medical condition and then expect a medical doctor to implement the inmate's recommendation for a course of treatment.

Neither the appeals process nor the CCR Title 15 allows inmates to make changes to staff assignments.  The appellant shall continue to receive treatment from the primary care provider assigned to his facility and/or specialists contracted by this institution.

## SUMMARY:

On October 16, 2006, Dr. Beregovskaya attempted to evaluate the appellant regarding the health care complaints raised in this appeal.  The appellant's argumentative and unpleasant behavior was of little assistance in completing the appeal process. Documentation in the Unit Health Record (UHR) reveals the appellant's vision has been appropriately evaluated by Dr. Garcia on February 1, 2006, (see copy eye exam attached).  Dr. Beregovskaya found no medical necessity to refer the inmate/patient to see an ophthalmologist.  On May 15, 2006, K. Kachare, MD submitted a routine CDCR 7243 Physicians Request for Services Form (RFS) for the appellant to receive a MRI of the right knee.  As a reasonable accommodation, Dr. Beregovskaya submitted a second request for this diagnostic study to the imaging department, (see copy imaging request attached).  The appellant's knee has previously been evaluated by two (2) different orthopedic surgeons, (i.e., D. Smith, MD and Orthopedic Surgeon as well as V. Amirpour, MD and Orthopedic Surgeon, (see copies Physician's Progress Notes attached).  There is no medical reason for evaluation by another orthopedic surgeon at present.  See also attached Physician's Progress Notes.

Based on the above, there is no evidence to support the appellant's allegation his health care is being ignored or that he has been a victim of cruel and unusual punishment due to action or inaction by medical staff at CSATF/SP, Corcoran.  The appellant's health care issues will continue to be addressed adequately and appropriately by medical staff at this institution.

## DECISION:

Your appeal is **PARTIALLY GRANTED**.  The appellant's vision has been appropriately evaluated by Dr. Garcia.  His right knee has been suitably examined and treated by this institution's medical staff as well as two (2) orthopedic specialists, Dr. Smith and Dr. Amirpour.  There is no evidence showing these professionals have supplied the inmate/patient with inadequate health care services.  The appellant shall

GIVENS, F., CDCR# T86266
Log # SATF-A-06-03872
Page 5

receive a MRI of the right knee as ordered by Dr. Kachare and Dr. Beregovskaya. This request is granted in part as the appellant will receive the MRI of the right knee in the near future.

The appellant is advised that this issue may be submitted for a Second Level of Review if desired.

G. MILLER, SSA
Medical Appeals Analyst


10/23/06
G. MARTINEZ, HCM (A)
Health Care Manager (A)

Attachments

CSATF APPEALS
OCT 2 4 2006

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

EYE COMPLAINT

| | | VISION WITHOUT CORRECTION | | DATE OF CORRECTION | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | SPHERE | CYLINDER | AXIS | PRISM | VISION |
| PRESENT CORRECTION | FAR | R.E. | | | | | | |
| | | L.E. | | | | | | |
| | NEAR | R.E. | | | | | | |
| | | L.E. | | | | | | |

| | | | | DATE OF CORRECTION | | | RETINOSCOPY (DATE) | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | CYLINDER | | VISION | CYCLO. | MANIF. |
| PRESCRIBED CORRECTION | FAR | R.E. | | | | | | R.E. | L.E. |
| | | L.E. | | | | | | | |
| | NEAR | R.E. | | | | | | | |
| | | L.E. | | | | | | | |

| COLOR VISION: (TEST USED) | TENSION | | TACTILE | | SCHIOTZ | |
|---|---|---|---|---|---|---|
| | R.E. (MM) | | | | L.E. (MM) | |

PUPILLARY REACTION

ASSOCIATED MOVEMENTS

MUSCLE BALANCE                NPC

EXTERNAL EXAMINATION

MEDIA AND FUNDI (INCLUDING SLIT LAMP STUDY)

DIAGNOSIS

RECOMMENDATION

TREATMENT

| FRAME SPECIF. | P.D. | BRIDGE | TEMPLE | EYE SIZE | DECENTER | | BIFOCAL SH | BIFOCAL INSET |
|---|---|---|---|---|---|---|---|---|
| | | | | | R.E. | L.E. | | |

SIGNATURE OF EXAMINER                DATE 2-06

NAME Givens                NUMBER

HOSPITAL

OPHTHALMOLOGIC EXAMINATION

CDC 7224 (Rev. 9/77)

OPTHALMOLOGICAL EXAM

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

A # 166 L

### HEALTH CARE SERVICES
### PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME _Givens Francois_ | CDC NUMBER T 26966 | INSTITUTION PBSP |
|---|---|---|

| DATE OF BIRTH 11-7/64 | EPRD DATE 8/2008 | GENDER M |
|---|---|---|

| PRINCIPLE DIAGNOSIS: TDK Ⓡ | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S): MRI Ⓡ Knee | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation          Outpatient/Inpatient          Initial/Follow-up

Requested Treatment/Service is:     EMERGENT          URGENT          (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____    Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* _____
_____
_____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE 5-15-06    Utilization management tracking #: | |
| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT | |

FINDINGS: _____
_____
_____

RECOMMENDATIONS: _____
_____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN      - TO UHR PENDING ORIGINAL
CANARY    - CONSULTANT
PINK        - UM
GOLD       - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

DEPARTMENT OF CORRECTIONS                                              STATE OF CALIFORNIA

**REQUEST FOR X-RAY**   MRI ® hull

NAME G.VANS          NUMBER T86286    HOUSING A-3,121L   SEX M   HEIGHT   WEIGHT

CHECK APPROPRIATE BOX         ☐ STAT      Was approved on 5.7.06

☒ ROUTINE                                              TECH   FILMS   EXP.

X-RAY VIEWS REQUIRED   approval is in the chest

BRIEF HISTORY

COPY

SIGNATURE OF ORDERING PHYSICIAN   O. Baufee          DATE 10-16-06

CDC-7214 (9/77)

| DATE | TIME | |
|------|------|---|

Appeal - 602

10.16.06
11:15

(1) Inmate requests to be evaluated by ophtalmologist/opthometrist. He was seen by orthometrist on site. 9.1.06. He was evaluated, glasses were prescribed. The Inmate is not satisfied with medical care.
He would like to have the second opinion and new exam.

(2) Had ® Knee MRI - 2008/05. Last arthroscopy was done 2005. Was evaluated by Dr. Smith, was not satisfied with treatment. Requested the second opinion, was seen by Dr. Quirkpour for second opinion. Dr. Quirkpour requested MRI of ® Knee which was endorsed. Request for MRI is in the chart — dated 5.15.06.

3

| INSTITUTION | PHYSICIAN | ROOM NO. | CDC NUMBER, NAME (LAST, FIRST, MI) |
|-------------|-----------|----------|-------------------------------------|
| | O. Benufeed | A160 | Cavens T56266 1/7/64 |

**PHYSICIAN'S PROGRESS NOTES**

CDC 7230 (7/90)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

| DATE | TIME | |
|------|------|---|
| 10.16.06 | | O: Inmate walked in and in couple minutes was involved |
| | 11:30 | in arguments with Gary Miller, SSA med. appeals analyst. |
| | | Mr Givens was very agitated and appehensive. He did not want to discuss the appeal. He failed to threaten Mr Miller with law suit. |
| | | The Interview was terminated and Inmate left the room. |
| | | A: (R) knee Internal derangement Ophthalmology evaluation request PMT request |
| | | P: To follow with previous plan MRI of (R) knee Ortho (R) knee f/u with orthoscopy after MRI                 O. Bouldac |

| INSTITUTION | PHYSICIAN | | ROOM NO. | CDC NUMBER, NAME (LAST, FIRST, MI) |
|---|---|---|---|---|
| | O | | | Givens, F T 86266 |

**PHYSICIAN'S PROGRESS NOTES**

CDC 7230 (7/90)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

MEDICAL DEPARTMENT

## PROCEDURE TO REQUEST

## A MEDICAL SECOND OPINION

## AND/OR

## PROCEDURE AT INMATE EXPENSE

1.  The California Department of Corrections will not perform or pay for any tests or procedures which have not been authorized as medically necessary by CDC medical staff.

2.  A relative or an attorney or other interested party wanting an inmate examined by a private physician must submit a written request to the institution head (Warden). The warden will grant the request after consultation with the institution's Chief Medical Officer, unless it is determined that specific case factors warrant denial.

3.  The cost of private consultation will be paid by the inmate or person requesting the service.

4.  Selection and hiring of the consultant will be arranged by the party requesting the consultation. That information will be provided to CSATF's medical department by the person requesting the service.

5.  The consultant's licensure and credentials must be verified by the medical department prior to scheduling the evaluation.

6.  After permission for consultation is granted and the consultant is identified and credentials are verified, the medical department will arrange a mutually convenient time for the evaluation of the inmate in CSATF's medical clinic.

7.  A gate clearance for entry to the prison must be issued for the consultant through the hospital administrator's office. The gate clearance information required includes: name, occupation, address, social security number, date of birth, and driver's license number.

8.  The consultant may offer opinions and treatment recommendations for the consideration of CDC medical staff but he/she may not order treatment for an inmate.

9.  If the consultant endorses a procedure for the patient the patient may request consideration of the procedure by CSATF's medical and custody departments.

10. Arrangements must be made in advance by the inmate for payment of expenses associated with performance of the procedure, including the charge for the procedure, the facility, and the costs of transportation and custodial supervision.