1  Francois P. Givens,#T-86266
   California Rehabilitation Center
2  P.O. Box 3535
   Norco, Ca., 92860
3  Plaintiff, In Pro Se.

FILED

08 FEB 21 PM 12:10

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11  FRANCOIS P. GIVENS,                    ) Case No: C07-3575 MJJ (PR)
12      Plaintiff,                         ) PLAINTIFF'S OPPOSITION TO DEFENDANTS"
13  v.                                     ) MOTION TO DISMISS
14  JAMES TILTON, et al.,                  )
15      Defendants.                        )

THE HONORABLE JUDGE MARTIN J. JENKINS

NORTHERN DISTRICT OF CALIFORNIA

Opposition/Motion to Dismiss                 - i -
ND Cal C07-3575 MJJ

1  Opposition To Motion To Dismiss
2       Plaintiff, Francois P. Givens, does oppose Defendant's non-enumerated motion to dismiss (Federal
3  Rule of Civil Procedure (FRCP) 12(b)) the operative complaint for this action, in which Defendants
4  allege that the Plaintiff failed to exhaust administrative remedies for the cognizable claims
5  currently pending in this action.
6       Plaintiff asserts that he has exhausted all administrative remedies for his cognizable claims,
7  insofar as the Defendants have erred in filing and addressing Plaintiff's grievance related to
8  this action, while the Plaintiff performed all steps tantamount to allow the Defendants an
9  opportunity to address the grievance.
10
11 Statement of Facts
12      On 12-20-02, the Plaintiff was sentenced to (3) concurrent 8-year prison terms in San Francisco
13 Superior Court (SFSC) CASE#184987. ON 7-21-03, the Plaintiff was housed in general population
14 on the B-yard facility at CSATF/SP. The Plaintiff soon became known as "Johnny Corcoran" by
15 correctional officers at the institution because of his propensity to file grievances and lawsuits,
16 while assisting others to do the same at the facility. The Plaintiff soon experienced retaliation
17 from those same officers (fn1), and was harassed by gang members who were affiliated with a
18 correctional officer whom the Plaintiff had named as a Defendant in FD Cal Case#CV-F04-6288 AWI
19 DLB-P. ON 11-19-05, the Plaintiff voluntarily removed himself from general population after a
20 confrontation with one of those gang members. On or around 12-28-05, the Plaintiff was housed
21 on the A-yard "Special Needs Facility" (SNY) at CSATF/SP.
22      On 1-26-06 in First Appellate District Court of Appeal Case#A101176, the state appellate court
23 reversed one of the Plaintiff's convictions, remanding the case back to the inferior tribunal
24 to address sentencing error, directing the superior court to give "due heed" to double jeopardy
25 principles and the proscription of multiple punishments for the same act. On 5-25-06, the Plaintiff
26 was transported to the San Francisco County Jail to appear for "re-sentencing" in SFSC#184987
27 (see 1-7-08 Declaration, D.Robert Duncan, Exhibit "B"). On 6-16-06, the superior court dismissed
28 the allegationson Count I, stayed punishment on Count III and imposed an 8-year prison sentence

Opposition/Motion to Dismiss          - 1 of 10 -
ND Cal C07-3575 MJJ

1  with restitution in the amount of $200 dollars on Count II only, reducing the original restitution
2  order from $600 to $200 dollars (see 12-19-07 Request For Summary Judgment, herein "RFSJ", Appendix
3  "C" at 8-11).
4     On 7-11-06, the Plaintiff was transferred from the county jail to San Quentin State Prison
5  (SQSP), en route back to the A-yard facility at CSATF/SP (fn2). On that day, Receiving and Release
6  (R&R) at SQSP informed the Plaintiff that he was famous because of his litigation efforts in prison,
7  the Plaintiff would be a nobody when he got out of prison and that the Plaintiff's filing of his
8  federal habeas corpus to challenge the remainder of his state court convictions, "[a]in't gonna
9  happen!" (Case#C07-1448 MJJ in this Court). As a direct result of the Defendant's foreknowledge
10 of the Plaintiff as a "jailhouse lawyer", the Defendants retaliated against him by: (1) confiscating
11 his legal materials; (2) embezzling funds from his trust account, and (3) subjected the Plaintiff
12 and similarly situated African-American prisoners to inhumane living conditions. Although the
13 Defendants had returned a portion of the embezzled funds to the Plaintiff, #13.98 which was
14 misappropriated on 8-24-06 was never returned to the Plaintiff.
15    On 8-20-06, the Plaintiff submitted a CDC602 Inmate Appeal form to the Warden at SQSP, with
16 copies served on various state officials and this Court (Complaint, Appendix "A" at 2-9). The
17 Plaintiff used the mandatory form to submit a citizens' complaint against SQSP Warden Robert L.
18 Ayers, Jr., for "[h]is failure to ensure that subordinate officers adhere to regulations established
19 by the State of California regarding the accurate maintenance of inmate trust accounts and tracking
20 of restitution fines ordered by court(s)" (Id., at 2), presenting the citizens' complaint as an
21 allegation that Warden Ayers promulgates a policy of inaction which allows for his subordinate
22 officers to embezzle prisoner funds (Id).
23    The 8-20-06 attachment to the citizens' complaint explicitly addressed the confiscation of
24 Plaintiff's legal materials and embezzlement of his funds which occurred immediately after the
25 Plaintiff's argument with Defendant Nollette (Id., at 3). The Plaintiff did not address the
26 "inhumane living conditions" because he had already been transferred from the conditions.
27    While CDCR Departmental Operational Manual (DOM, 1-1-07)§54100.11 provides different criteria
28 which authorizes the "BYPASS" of the informal level of review for appeals, it also provides that

Opposition/Motion to Dismiss        - 2 of 10 -
ND Cal C07-3575 MJJ

1  "[T]he informal level shall be bypassed when it is determined by the appeals coordinator that
2  the inmate cannot reasonably obtain a proper informal level response to the problem cited" (Id).
3  DOM§54100.25.2 provides, "[I]nvestigation of complaints alleging peace officer misconduct shall
4  be conducted by an employee designated by the Warden...Unless the alleged misconduct is of a
5  criminal nature under investigation, the employee shall be notified of the complaint as soon as
6  possible. The allegations in the 8-20-06 citizen's complaint were of a criminal nature.
7     DOM§54100.26 provides the procedure for processing a citizen's complaint by a prisoner,
8  referring to First and Second Level reviews, while neglecting to mention an informal level
9  prerequisite. These provisions of DOM should have allowed the Appeals Coordinators at SQSP to
10 recognize that a proper informal level response from those persons accused of felonious activity
11 was impractical as well as precluded by CDCR's own regulations. Instead of waiving the informal
12 level requirement, the Appeals Coordinators screened out the appeal by requiring the Plaintiff
13 to submit the appeal to the trust accounting office, rather than that office directing the appeal
14 to appropriate personnel. The Plaintiff did not seek an informal level response to challenge a
15 policy promulgated by Warden Ayers, instead electing to follow departmental procedures and
16 regulations which govern the appeals process (see CCR§3084.1 et seq.) to properly and timely submit
17 the appeal at the First, Second and Director's Levels for review.
18    Retaliation against the Plaintiff for the filing of lawsuits, and in particular, this lawsuit
19 has continued to plague the Plaintiff. On 8-9-07, this Court did order service of process upon
20 the Defendants in this action, and four days later, the Defendants informed the Plaintiff that he
21 fit the criteria for a mandatory transfer to a new SNY facility at the California Rehabilitation
22 Center (CRC). Upon his 9-10-07 arrival, the Plaintiff was informed by R&R staff at CRC that the
23 institution does not store prisoner legal materials in accordance with DOM§54030.10.2. ON 11-14-07,
24 R&R staff at CRC, which had later agreed to store the materials, informed the Plaintiff that the
25 institution would no longer store the materials which had been stored in accordance with this
26 DOM Section since 12-7-05. This cause the spoliation of relevant evidence for both pro se actions
27 initiated by the Plaintiff and currently pending before this Court.
28 //

Opposition/Motion to Dismiss           - 3 of 10 -
ND Cal C07-3575 MJJ

1  CRC has also misappropriated funds from the Plaintiff's trust account, using the same
2  fictitious case number as previously used by Defendant S.Mendonca. On 2-22-07, CSATF/SP Correctional
3  Case Records Manager (CCRM) Raleen Prud'Homme submitted a declaration in support of Defendant's
4  opposition in FADC Case#A116196, in which she stated that after reviewing the Plaintiff's central
5  file, she determined that in June 2006, the superior court had "reduced" Plaintiff's restitution
6  from $600 to $200 dollars, stating that funds which had been extracted from his account in excess
7  of that $200 dollar order had been paid back into Plaintiff's trust account (RFJN, Appendix "C"
8  at 9=10). The 12-19-07 Trust Account statement printed at CRC shows that a $200 dollar restitution
9  order for non-existent case#184987A had again been imposed against the Plaintiff's trust account,
10 with $142.54 being extracted for restitution which has already been paid in full (fn3).
11     The Defendants continue to retaliate against the Plaintiff for his filing of grievances and
12 lawsuits against the Defendants, and this contiuing cause of action for the same violations creates
13 a justiciable cause which can be decided before this Court.
14                                   ARGUMENT
15 I. PLRA REQUIRES PRISONERS TO EXHAUST ALL ADMINISTRATIVE REMEDIES BEFORE FILING LAWSUIT
16     "[U]nder 42 USC§1997e(a), an inmate seeking only money damages must complete any prison
17 administrative process capable of addressing the inmate's complaint and providing some relief,
18 even if the process does not make specific provision for monetary relief" (Booth v. Churner(2001)532
19 US 731). The Prison Litigation Reform Act (PLRA, 110 Stat. 1321-73, as amended, 42 USC§1997e(a)
20 (1994)) directs that "[N]o action shall be brought with respect to prison conditions under section
21 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
22 correctional facility until such administrative remedies as are available are exhausted" (Id).
23 This exhaustion requirement applies to all prisoner lawsuits which address prison conditions,
24 including excessive use of force cases (porter v. Nussle(2002)534 US 516).
25
26 II. DEFENDANTS HAVE FAILED TO COMPLY WITH THEIR OWN RULES WHICH GOVERNS THEIR APPEAL PROCESS
27     In Woodford v. Ngo(2006)126 S.Ct 2378, the US Supreme Court held that the PLRA's exhaustion
28 requirement mandates that prisoners "properly exhaust" administrative remedies:

Opposition/Motion to Dismiss          - 4 of 10 -
ND Cal C07-3575 MJJ

..."Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"...Id., at 2386.

Administrative law gives parties the incentive to exhaust administrative remedies by "giv[ing] the agency a fair and full opportunity to adjudicate their claims" and this "means using all steps that the agency holds out, and doing so properly" (Id., at 2385; Pozo v. McCaughtry(C.A.7 2002)286 F.3d 1022,1024). As a general rule, "courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under it's practice" (Woodford, supra, 126 S.Ct at 2385; US v. Los Angeles Tucker Truck lines, Inc(1952)344 US 33,37; see also Sims v. Apfel(2000)530 US 103,108).

On 8-20-06, the Plaintiff submitted a CDC602 Inmate Appeal against SQSP Warden Ayers as a citizens' complaint, in which the Plaintiff alleged that "[t]he Warden at SQSP promulgates a policy/custom of inaction which allows subordinate officers to "embezzle" inmate funds, within the meaning of PC§504" (Complaint, Appendix "A" at 2) (fn4). Unconstitutional policies/customs of inaction are clearly actionable under 42 USC§1983:

..."The custom or policy of inaction...must be the result of a conscious or deliberate choice to follow a course of action...made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"...
Oviatt v. Pearce(C.A.9 1992)954 F.2d 1470,1477

..."An official who has failed to prevent a constitutional violation by inadequately training, supervising or investigating his subordinates may be held liable under §1983"...Gausvik v. Perez(E.D. Wash 2002)239 F.Supp.2d 1087,1099.

..."Acts of omission, as well as commission, can serve as basis for finding an unconstitutional policy or custom"...Doggett v. Perez(E.D Wash 2004)348 F.Supp.2d 1179.

Defendant Tilton is ultimately charged with the promulgation of rules and regulations which govern the administration of CDCR (Complaint at 7:7-14). In the operative complaint, Plaintiff alleged that SQSP Warden Ayers, "[i]n [his] individual capacity...has failed to properly train, supervise and control the acts or omissions of his Appeals Coordinators at SQSP (Id., at 8:11-14), and "[i]n [his] official capacity, had actual or constructive knowledge of the unconstitutional policy/customs of 'embezzlement' and 'degradation of the appeals process', and actively participated in the acquiescence of the unconstitutional policies" (Id., at 8:16-19).

//
Opposition/Motion to Dismiss         - 5 of 10 -
ND Cal C07-3575 MJJ

1  It is clearly evident that the Plaintiff's objective intent in formulating the 8-20-06 citizens'
2  complaint was to challenge unconstitutional policies/customs implemented by the person charged
3  with the duty to govern, discipline and establish policy at SQSP (PC§2079), Warden Ayers. While
4  there may not be a written policy of "inaction" at SQSP which allows retaliation by his subordinate
5  officers, the action of Warden Ayers' subordinates is evidence of an "unwritten" policy which allows
6  this type of behavior:
   ..."Congress included customs and usages [in §1983] because of the persistent and widespread
7  discriminatory practices of state officials...Although not authorized by written law, such
   practices of state officials could well be so permanent and well settled as to constitute a
8  'custom or usage' with the force of law"...Adickies v. S.H Kress & Co.(1970)398 US 144,167-168.
9  The PLRA did not impose a "name all defendants" requirement as part of exhaustion (Jones v.
10 Bock(2007)127 S.Ct 910), nor does it require a claimant to "[p]rovide the agency with a preview
11 of the lawsuit by reciting every possible theory of recovery or factual detail that might be
12 relevant" [Citations.] "A claim can put an agency on notice of facts it should discover during
13 its investigation of the claim" (Gomez v. Winslow(ND Cal 2001)177 F.Supp.2d 977,983). While the
14 8-20-06 citizens' complaint did not recite all legal theories, factual details and Defendants
15 relevant to Plaintiff's claims, the Plaintiff did follow CDCR regulations by submitting the appeal
16 to the person whom the Plaintiff felt was ultimately responsible for policies which allowed the
17 malfesences to occur, Warden Ayers:
   ..."The inmate or parolee shall attempt to resolve the grievance informally with the involved
18 staff, unless excepted by Sections 3084.5(a)(3) and 3084.7"...CCR§3084.2(a)(2)(B).
19 DOM§54100.11 provides, in relevant part, that before an appeal can be formally processed, the
20 "[i]nmate/parolee shall make every effort to informally resolve the problem with the appropriate
21 staff member. The inmate parolee shall describe the problem and action requested, in writing, on
22 CDC Form 602, A and B" (Id). The Plaintiff followed these instructions to the letter by completing
23 Sections A and B on the CDC602 Form, and submitted the appeal, as directed, to the person whom
24 was responsible for the policies which Plaintiff grieved, Warden Ayers (Complaint, Appendix "A"
25 at 2) (fn5). However, CDCR regulations provides exceptions for the informal attempt prerequsite,
26 with three exceptions relating directly to the subject matter of the 8-20-06 citizens' complaint:
27 Departmental regulations, policies, or operational procedures (CCR§3084.5(a)(2)(D); Any action,
28 which the appeals coordinator determines, cannot be resolved informally (CCR§3084.5(a)(2)(F));

Opposition/Motion to Dismiss          - 6 of 10 -
ND Cal C07-3575 MJJ

1  and alleged misconduct by a departmental peace officer (CCR§3084.5(a)(2)(G)).

2  With the 8-20-06 citizens' complaint alleging misconduct by Warden Ayers, and challenging departmental regulations, policies, or operational procedures, the appeals coordinator should have made the determination that the citizens' complaint could not be resolved informally. On 9-6-06, Appeals Coordinators Chandler-Dacanay and W.Jeppeson screened out the appeal, required an informal level response by the trust accounting office (Complaint, Appendix "A" at 1) to answer the citizens' complaint which alleged criminal misconduct by the trust accounting office (Id., at 2) (fn6).

On 9-19-06, the Plaintiff resubmitted the appeal, objecting to the Appeals Coordinator's determination that submitting the appeal to the Warden met the informal attempt prerequisite, and to challenge the fact that the citizens' complaint did not require an informal level of review. In his 9-19-06 attachment, the Plaintiff stated that his appeal was neither "vague or ambiguous", it challenged "policy/custom that is promulgated by SQSP" and that he was not challenging an 'action' or 'decision' which could be resolved informally (Complaint, Appendix "A" at 10). This objection, made at the time appropriate under its practice" (Woodford, supra, 126 S.Ct 2385), preserved the Plaintiff's defense of allegations that he failed to followed the procedural requirements of the appeals process, and failed to exhaust administrative remedies.

In screening out the citizens' complaint, it can be firmly said that the Appeals Coordinators were not in compliance with their own "critical procedural rules" (Woodford, supra, 126 S.Ct at 2386), which, in essence, rendered the appeals process unavailable for the Plaintiff (see Handberry v. Thompson(C.A.2 2006)446 F.3d 335,341["The PLRA clearly does not require a prisoner to exhaust administrative remedies that do not address the subject matter of the complaint"]) (fn7). With the Plaintiff continuing to timely submit the erroneously screened out appeal to the First, Second and Director's Level of review (see Butler v. Adams(C.A.9 2005)397 F.3d 1181,1183[PLRA requires prisoners to submit appeals to the highest level of review available]), it can be said that the Plaintiff has properly exhausted all administrative remedies which were available for the claims in this action:

> ..."Because the PLRA does not say when the process is "available", the court must apply the ordinary meaning of the term (see Asgrow Seed Co. v. Winterboer(1995)513 US 179,187). In Ngo, the Supreme Court rejected the idea that, for example, a process becomes unavailable because the prisoner does not comply with the procedural rules and therefore cannot obtain relief, and

Opposition/Motion to Dismiss                     - 7 of 10 -
ND Cal C07-3575 MJJ

1  required courts to look at the reason why the administrative process was unavailable (126 S.Ct 2387,2392-93). Thus, when the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfieted. In the other hand, when prison officials prevent inmates from using the administrative process...the process that exists on paper becomes unavailable in reality"...Kaba v. Stepp(C.A.7 2006)458 F.3d 678,684.

Conclusion

The Plaintiff, who could not reasonably obtain an informal level response for the 8-20-06 citizens' complaint, properly gave SQSP, as well as other state officials, fair notice and opportunity to address is claims of unconstitutional policies implemented by Warden Ayers. All underlying facts pertinent to the claims in this action, should have been investigated and discovered throughout the course of the Defendants' processing of the citizens' complaint, had the Defendants chose to follow their own regulations. Accordingly, the Plaintiff has properly exhausted all administrative remedies for all claims currently before this Court.

Date: February 13, 2008

X _____
Francois P. Givens,#T-86266
Plaintiff, In Pro Se.

- - - - - - - - - -FOOTNOTES- - - - - - - - - - -

fn1) E.D. Cal Case#CV-F04-6288 AWI DLB-P, "GIVENS v. ADAMS, et al.", is currently on appeal in the Ninth Circuit Court of Appeals, and details the retalaiation against the Plaintiff which he has endured since 2004.

fn2) While Plaintiff's 9-10-07 History Movement Report shows that the Plaintiff was initially received into CDCR custody on 4-1-03 for SFSO#184987, the report erroneously purports that the Plaintiff was returned to SQSP on 7-11-06 with "additional" Case#184987, the same case in which the First Appellate District Court (#A101176) had ordered a reduction, not an "additional" sentence (1-7-08 Declaration/D. Robert Duncan, Exhibit "B").

fn3) The Plaintiff was recently informed by CRC Correctional Counselor J.Sheppard that he would not be able to transfer his parole out of state until the Plaintiff paid the remainder of restitution for non-existent Case#184987A, which should have been paid in full on 1-10-08.

fn4) "[E]very officer of this state...and every deputy, clerk or servant of that officer, and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her possession or under his control by virtue of that trust, or secretes it with fraudulent intent...is guilty of embezzlement"...PC§504, in relevant part.

Opposition/Motion To Dismiss            - 8 of 10 -
ND Cal C07-3575 MJJ

"[F]unds in inmate's account are protected property interest, for purpose of due process analysis" (Gardner v. Wilson(CD Cal 1997)959 F.Supp 1224,1229), which mandates that procedural protections are required before an inmate may be deprived of such property interests.

fn5) "Prison officials failure to timely respond to a grievance could be a basis for a prisoner to show that he exhausted "available" administrative remedies (see Foulk v. Charrier(C.A.8 2001) 262 F.3d 687,698(district court lacked sufficient factual basis to find inmate failed to exhaust administrative remedies when prison officials had refused to respond to informal resolution request); Miller v. Norris(C.A.8 2001)247 F.3d 736,740(remedy that prison officials prevent inmate from using is not "availavble" remedy under §1997e(a))"...quoted in Sergent v. Norris(C.A.8 2003)330 F.3d 1084,1085.

fn6) "Formal appeals shall not be reviewed by a staff person who participated in the event or decision being appealed, or who is of a lower administrative rank than any participating staff"... CCR§3084.5(e).

fn7) On 4-17-06, prior to the attempted filing of the 8-20-06 citizens' complaint, the Plaintiff submitted a citizens' complaint against CSATF/SP Warden Ken Clark (Log#SATF-A-06-01558), "[f]or his failure to ensure proper training of staff at CSATF/SP in accordance with CCR§3287 (see 1-3-08 Declaration/R. Gomez, Motion to Dismiss, Exhibit "D"). The citizens' complaint was stamped as being received by the Appeals Coordinator at CSATF/SP on 4-27-06, with "BYPASS" stamped at the informal level of review (Id). The appeal was processed at First and Second levels of review, and the Diector's Level decision was rendered on 1-4-07.

Similarly, on 3-26-06, the Plaintiff submitted a citizens' complaint against Warden Clark (Log# SATF-A-06-01265), "[f]or willfully violating CDCR's own regulations (CCR§3122,3160 and DOM§ 53060.11) by failing to ensure daily hours of operation for the A-yard law library at CSATF/SP" (Id, at Exhibit "C"). "BYPASS" was stamped on the appeal at the informal level response, with the appeal being processed at First and Second levels of review. The Director's level decision was rendered on 1-10-07.

Other citizens' complaints submitted by the Plaintiff were also "BYPASSED" at the informal level of review (Log#SATF-A-07-01883 (Id., at Exhibit "F"); Log#SATF-A-07-01981 (Id., at Exhibit "G")). Whether processed routinely or as citizen's complaints, these appeals all "BYPASSED" the informal level of review at CSATF/SP. SQSP has not given adequate explanation as to why it did not elect to process the citizens' complaint as a regular appeal.

— — — — — — — — — —END OF FOOTNOTES— — — — — — — — — —

Opposition/Motion to Dismiss                    - 9 of 10 -
ND Cal C07-3575 MJJ

Declaration

Plaintiff, Francois P. Givens, does hereby declare under penalty of perjury by the laws of the United States that all information presented in this declaration, and opposition to Defendant's Motion to Dismiss is, to the best of his knowledge, TRUE and ACCURATE.

SWORN TRUE ON THIS 13th DAY OF February, 2008 IN NORCO, CALIFORNIA.

X _____
Francois P. Givens, #T-86266
Plaintiff, In Pro Se.