1  Francois P. Givens, #T-86266
   California Rehabilitation Center
2  P.O. Box 3535
   Norco, Ca., 92860
3  Plaintiff, In Pro Se.

FILED
08 APR 30 PM 1:35
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FRANCOIS P. GIVENS,                ) Case No: C07-3575 MHP (PR)
                                   )
    Plaintiff,                     ) REQUEST FOR TEMPORARY RESTRAINING ORDER /
                                   )
v.                                 ) PRELIMINARY AND PERMANENT INJUNCTION
                                   )
JAMES TILTON, Secretary-CDCR, et al.,  ) (FRCivP 65)
                                   )
    Defendants.                    )

THE HONORABLE MARILYN H. PATEL

CHIEF DISTRICT JUDGE

NORTHERN DISTRICT OF CALIFORNIA

Request For TRO/Injunction        - i -
ND Cal C07-3575 MHP

Nature of Request .............1

Applicable Facts .........1 – 3

POINTS AND AUTHORITIES
   I. TEMPORARY RESTRAINING ORDER AVAILABLE TO PREVENT LOSS OF RIGHTS BEFORE JUDGMENT .........3 – 4

   II. PLAINTIFF IS PROTECTED BY FOURTH AND FOURTEENTH AMENDMENTS FROM UNREASONABLE SEARCHES AND SEIZURES OF HIS LEGAL PROPERTY .........4 – 7

Conclusion .............7

Footnotes .........7 – 8

Declaration .............9

Certificate of Service ...........iii

1                           NATURE OF REQUEST

2     Plaintiff, FRancois P. Givens, does hereby request temporary restraining order [TRO] pursuant
3  to Rule 65 of the Federal Rules of Civil Procedure (FRCivP), in order to restrain Defendants from
4  confiscating or causing additional spoliation of evidence for this and any other pro se litigation
5  initiated by the Plaintiff. Plaintiff does also request that the TRO remains in effect until this
6  Court may decide the merits of this request for preliminary and permanent injunction.

7

8                              Applicable Facts

9     1) ON 7-11-06, as an out-to-court transfer, Plaintiff was received at San Quentin State Prison
10 Reception Center (SQSP R/C), where a Receiving and Release (R&R) Officer informed Plaintiff that
11 "You're famous while you are in here doing your legal stuff, but when you get out of here, you
12 will be a nobody, just like me". Plaintiff felt intimidated by the officer, and inform him that
13 he was only trying to file his federal habeas corpus to challenge the remainder of his convictions.
14 The officer stated, "It aint gonna happen", then proceeded to confiscate Plaintiff's writing
15 supplies (7-11-07 Complaint at 3:18-27). Afterwards, Plaintiff got into a verbal confrontation
16 with that officer's supervisor, Defendant O.Nollette, who confiscated all of Plaintiff's legal
17 materials on that day (Id., at 3:27-4:19).

18    2) On 7-11-07, after exhausting available administrative and state judicial remedies, Plaintiff
19 filed the operative complaint for this action. ON 8-9-07, this Court screened that complaint,
20 holding, inter alia, that Defendants had retaliated against Plaintiff by confiscating his legal
21 materials (fn1). One month later, on 9-10-07, Defendants retaliated against Plaintiff for the filing
22 of this action by transferring Plaintiff to a newly established men's facility at the California
23 Rehabilitation Center (CRC), notwithstanding Plaintiff's express desire not to transfer to the
24 Southern California area (see First Amended Complaint, herein 'FAC' at 6:27-7:13). Upon his arrival
25 at CRC, Plaintiff was told by an R&R officer that he had excessive legal materials which CRC would
26 not store, and Plaintiff would have to discard those materials, despite CDCR regulations which
27 authorize the storage of prisoner legal materials for active cases (see Title 15, Code of
28 REgulations (CCR)§3161; Departmental Operational Manual (DOM)§54030.10.2) (FAC at 7:13-15). The

Request For TRO/Injunction            - 1 of 9 -
ND Cal C07-3575 MHP

1  following day, the institution agreed to store the legal materials. However, (9) days after
2  Defendants demanded trial in this action, they informed the Plaintiff that they would no longer
3  store his legal materials, which had been stored by his previous institution (CSATF/SP) since 12-
4  12-7-05 (Id., at 7:15-23).
5     3) On 12-19-07, Plaintiff submitted a request for summary judgment to this Court, based on
6  Defendant's failure to timely respond to discovery requests. On 1-7-08, Defendants submitted a
7  motion to dismiss the operative complaint, based on Plaintiff's alleged failure to exhaust
8  administrative remedies for the cognizable claims currently pending before this Court.
9     4) On 2-18-08, in response to Defendant's motion to dismiss, Plaintiff submitted a proposed
10  First Amended complaint, in which he alleged, inter alia, the 11-16-07 spoliation of evidence for
11  this and other federal court actions initiated by Plaintiff, as well as continuing ongoing
12  violations of federal law stemming from retaliation brought on by Plaintiff's filing of this action.
13  Shortly thereafter, in CA9#06-16267, the Ninth Circuit Court of Appeals reversed judgment for
14  ND Cal#C06-2505 MJJ, "GIVENS v. SAN FRANCISCO POLICE DEPARTMENT", remanding to this Court to
15  determine in the first instance if equitable tolling applied to the circumstances of that case.
16  Virtually all documentary evidence was contained within the (6) boxes of legal materials which
17  Defendants forced Plaintiff to discard on 11-16-07.
18     5) On 3-24-08, CRC Dorm#408 Officer J.Jones accused Plaintiff of assisting other inmates to
19  file grievances against the officer. On 3-31-08 and 4-2-08, the officer searched Plaintiff's
20  locker in his living quarters. After the latter search, the officer informed Plaintiff that he
21  had excessive legal materials, and if he placed any other materials in his locker, he would be
22  forced to discard the materials. When Defendants stated that they would no longer store Plaintiff's
23  legal materials on 11-15-07, Defendants and their legal representative, Deputy Attorney General
24  D.Robert Duncan were made aware of the imminent spoliation of evidence, yet failed to prevent it
25  on 11-16-07.
26
27  //
28  //

Request For TRO/Injunction      - 2 of 9 -
ND Cal C07-3575 MHP

Plaintiff has previously filed similar retaliation claims against Defendants in ED Cal# CV-F04 6288 AWI-DLB-P, which is currently on appeal in the Ninth Circuit (#08-15093). The majority of the documentary evidence which supports those claims was also discarded on 11-16-07. Because actual First Amendment injuries have and continue to occur, and threatened irreparable harm is imminent, TRO is warranted in order to preserve the rights of the Plaintiff in this and other federal court cases, until this Court may decide the merits of this case. Because CCR regulations which govern the storage of inmate owned legal materials (CCR§3161 and DOM§54030.10.2) are ambiguous, and not in accord with controlling federal case law, Plaintiff seeks preliminary and permanent injunction to enjoin the modification of these regulations in order to conform with the mandates of federal law and the Constitution of the United States.

POINTS AND AUTHORITIES

I. TEMPORARY RESTRAINING ORDER AVAILABLE TO PREVENT LOSS OF RIGHTS BEFORE JUDMENT

A. <u>Standard</u> - Issuing of Temporary Restraining Order

..."The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction (Lockheed Missle & Space Co.,Inc v. Hughes Aircraft Co.(ND Cal 1995(887 F.Supp 1320, 1323). The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test or an alternative sliding scale test (Cassin v. Bowen(C.A.9 1987)824 F.2d 791,795). Under the traditional test, a party must show: "1) a strong likelihood of sucess on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)" (Save or Sonoran,Inc. v. Flowers(C.A.9 2005)408 F.3d 1113,1120).
Alternatively, a party seeking injunctive relief under FRCivP 65 must show either 1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or 2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party"...Garrett v. City of Escondido(SD Cal 2006)465 F.Supp.2d 1043,1048.

Under either test, TRO and injunctive relief is warranted in this action. It is clear that the Fourteenth Amendment right to access the courts survives criminal detention (Bounds v. Smith(1977) 430 US 817,821-822). With that being considered, "[p]unishment in retaliation for prisoner's exercise of his right to access the courts may constitute First Amendment violation" (Rizzo v. Dawson(C.A.9 1985)778 F.2d 527,531-532). Defendants have and continue to retaliate against the Plaintiff who has emphatically pushed his First Amendment right to petition and file lawsuits while incarcerated. Plaintiff asserts that the first three prongs of the tradition test have been met.

Request For TRO/Injunction     - 3 of 9 -
ND Cal C07-3575 MHP

1  While the operative complaint contains cognizable retaliation claims, the FAC demonstrates how
2  Defendants have retaliated against Plaintiff after this Court ordered service of summons and
3  complaint on Defendants (FAC at 9:4-14). Defendants continue to threaten Plaintiff with further
4  destruction/spoliation of evidence due to Plaintiff's exercise of First Amendment rights or his
5  assisting other prisoners in doing so. The hardship endured by Plaintiff if this Court were not
6  to issue TRO/Injunction greatly outweighs and hardship incurred upon Defendants for allowing
7  Plaintiff to retain his active legal materials in his living quarters (fn2).

8  In order to determine which direction the balance of hardships tips, "a court must identify
9  the possible harm caused by the [TRO] against the possibility of the harm caused by not issuing
10 it" (University of Hawaii Professional Assembly v. Caytano(C.A.9 1999)183 F.3d 1096,1108).
11 Plaintiff has retained approximately the same volume of active legal materials within his locker
12 since the 11-16-07 spoliation of evidence caused by Defendants. The only possible hardship endured
13 by Defendants should TRO issue would be Plaintiff's continued ability to prosecute active pro se
14 litigation in the federal courts. Accordingly, justice would be served by the issuance of TRO in
15 this action:
   ..."The purpose of the TRO is to preserve the status quo before a preliminary injunction hearing
16 may be held; its provisional remedial nature is designed merely to prevent irreparable loss
   of rights prior to judgment"...Garrett, supra, 465 F.Supp.2d at 1048.
17

18 II. PLAINTIFF IS PROTECTED BY FOURTH AND FOURTEENTH AMENDMENTS FROM UNREASONABLE SEARCHES AND
      SEIZURES OF HIS LEGAL PROPERTY
19

20 This nation's high court in Hudson v. Palmer(1983)468 US 517 recognized that prisoners must
21 be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible
22 with the objectives of incarceration (Id., 468 US at 523). In the Court's analysis of the Fourth
23 Amendment's application to prisons, <u>Hudson</u> held that prisoners do not possess Fourth Amendment
24 protection against unreasonable searches and seizures (Id., at 530), however, the Court went on
25 to state:
   ..."Our holding that respondent does not have a reasonable expectation of privacy enabling him
26 to invoke the protections of the Fourth Amendment does not mean that he is without a remedy
   for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants
27 can ride roughshod over inmate's property rights with impunity"...Id.

28 //
Request For TRO/Injunction          - 4 of 9 -
ND Cal C07-3575 MHP

1  In accord with the holding in Hudson is Cal PC§2600, which provides, in relevant part, "[A]
2  person sentenced to imprisonment in a state prison may during that period of confinement be deprived
3  of such rights, and only such rights, as is reasonably related to legitimate penological interest"
4  (Id.) Section 2601 of the Penal Code provides, inter alia, statutory authority establishing prisoner
5  civil rights to own personal property, correspond confidentially with any member of the State Bar
6  or public office and to initiate civil actions (PC§2601(a), (b) and (d)). These state-created civil
7  rights are appositive to prisoner's Sixth Amendment right to self-representation(Faretta v.
8  California(1975)422 US 806), First Amendment rights to pursue direct appeals (Douglas v. California
9  (1963)372 US 353) and habeas corpus (Johnson v. Avery(1969)393 US 483), as well as the right to
10 vindicate constitutional rights through 42 USC§1983 actions (Wolff v. McDonnell(1974)418 US 539).
11 Clearly, the First Amendment right to file prison grievances and lawsuits (Rhodes v. Robinson(C.A.9
12 2004)380 F.3d 1123) is a right which is reasonably related to legitimate penological interests
13 of which prisoners may not be deprived.
14  CDCR has created regulations designed to protect a prisoner's access to the courts (see CCR§§
15 3120,3122 [access to prison law libraries]; §3134 [unlimited postage for mailings to the courts];
16 §§3134-3143 [Processing of incoming and outgoing confidential mail]; §3160 ["[I]nmate access to
17 the courts shall not be obstructed"]). Because of security concerns within their institutions,
18 CDCR also regulates the amount of personal property allowed in prisoner living quarters (CCR§3190).
19 An exception to this regulation exists which allows prisoners to possess up to one cubic foot of
20 legal materials/documents related to their active cases, in excess of the six cubic feet of
21 allowable property in their assigned quarters/living area (CCR§3161). Inmates <u>may</u> request the
22 institution/facility to store excess legal materials related to active cases when those materials
23 exceed allowable limits (Id.)
24  While this regulation does not affirmatively clarify the duty of prison officials to store legal
25 materials for active cases, DOM§54030.10.2 does little to clear the ambiguity:
   ..."Inmates may request that the institution/facility securely store excess legal materials/
26 documents related to their active case(s) when such materials/documents exceed this one cubic
   foot allowance. Only that material in excess of the additional one cubic foot <u>shall</u> be stored"...
27 Id., in relevant part (fn3).
28 //

Request For TRO/Injunction       - 5 of 9 -
ND Cal C07-3575 MHP

1   In November 2004, CDCR, Defendants in ED Cal#CV-F04-6288 AWI DLB-P forced Plaintiff to discard
2   (2) boxes of legal materials immediately following Plaintiff's filing of a First Amended complaint
3   in that civil rights action. Shortly thereafter, Plaintiff discovered the regulation which
4   authorizes the storage of legal materials at an institution. Following Plaintiff's placement in
5   Administrative Segregation at CSATF/SP on 12-7-05, (4) boxes (approximately 4-cubic feet per box)
6   of legal materials were stored at the institution in a locked storage container, where Plaintiff
7   would routinely access the materials until his 9-10-07 transfer to CRC. This Court should note,
8   Plaintiff's trial transcripts and documents related to his criminal conviction in San Francisco
9   Superior Court #184987 easily exceeds the one cubic foot additional space limitations within living
10  quarters.

11  Upon Plaintiff's transfer to CRC, after initially stating that the institution would not store
12  Plaintiff's legal materials, the institution agree to store the materials, however, the materials
13  were not placed within a secured location as mandated by DOM§54030.10.2. Both R&R officers and
14  general population inmates who are not supposed to come in contact with Plaintiff because of his
15  protective custody status, had access to the legal materials. Plaintiff is unsure as to whom may
16  have accessed those materials while they were in R&R.

17

18  In Hydrick v. Hunter(C.A.9 2006)466 F.3d 676, the Ninth Circuit addressed retaliatory searches
19  and arbitrary seizures of prisoner personal property. In holding that the watchword of the Fourth
20  Amendment in every context is reasonableness, the Hydrick Court stated:
21  ..."Accepting these allegations as true, we believe plaintiff's may be able to state a "clearly established" violation of their Fourth Amendment rights, and thus, the claims are not appropriate for dismissal at the Rule 12(b)(6) stage"...Id., 466 F.3d at 694.
22

23  This Circuit has previously considered prisoner Fourth Amendment property rights in Thompson
24  v. Souza(C.A.9 1997)111 F.3d 694, stating, "Notwithstanding the language in Hudson, our Circuit
25  has held that the Fourth Amendment right of people to be secure against unreasonable searches
26  and seizures extends to incarcerated prisoners" (Id., at 699). Fourteenth Amendment property and
27  due process guarantees apply to situations in which there exists a constitutionally protected
28  property interest (see Board of Regeants v. Roth(1972)408 US 564,569). Plaintiff has legitimate

Request For TRO/Injunction          - 6 of 9 -
ND Cal C07-3575 MHP

1   claim to entitlement (Groten v. California(C.A.9 2001)251 F.3d 844,850) to his own statutorily
2   and constitutionally protected legal materials, as well as adequate, secure storage areas at his
3   place of incarceration when the volume of those materials exceeds allowable space limits within
4   his living quarters. Currently, such storage areas are not provided at CRC. At any time during
5   these proceedings, Defendants may require Plaintiff to discard additional materials, and have
6   threatened to do so on more than one occassion. At a minimum, this would constitute an unlawful
7   seizure of Plaintiff's personal property, as well as continuing First Amendment violation, and
8   should not be allowed to occur.

## CONCLUSION

WHEREFORE, Plaintiff PRAYS for the following relief:

a) This Court issues temporary restraining order [TRO] to prevent Defendants from confiscating, or forcibly, intentionally or recklessly causing the additional spoliation/destruction of evidence for this or any other litigation initiated by the Plaintiff;

b) This Court establishes that the TRO is to remain in effect until this Court does decide the merits of Plaintiff's request for injunction and or this case is decided;

c) This Court does preliminarily and permanently enjoin Defendant California Department of Corrections and Rehabilitation, thier agents, representatives, officers and/or any and all persons working for or on behalf of Defendants to modify CCR§3161 and DOM§54030.10.2 in order to affirmatively state ministerial duties of the department to store prisoner active legal materials by making reasonable allowable limits for legal materials withing living quarters and in secured storage areas; and

d) Any other and such further relief that this Court deems fair, just and or required by law.

Date: 4-20-08                              X _____
                                           Francois P. Givens, #T-86266
                                           Plaintiff, In Pro Se.

- - - - - - - - - -FOOTNOTES- - - - - - - - - -

fn1) Also on 8-9-07, this Court held that Plaintiff had stated (11) cognizable claims on habeas corpus (#C07-1448 MHP), directing Respondents/Defendants to file dispositive motion within (90) days. Upon Plaintiff's 9-10-07 arrival at CRC, the law library opn Facility IV was inoperative and there was not an operational procedure established for prisoners to obtain legal duplication services.

While the Facility IV law library is now staffed and operative, it is limited to (2) user access due to the use of a (2) computer legal database system which is in lieu of a complete Gilmore collection. The database is only current through 8-10-07, (6) days before the California Supreme

Request For TRO/Injunction          - 7 of 9 -
ND Cal C07-3575 MHP

1  Court's decision in People v. Sloan (8-16-07 #S-132605). The Sloan decision clarifies California's
2  interpretation of federal double jeopardy principles, and directly relates to several of the claims
   which Plaintiff presents on habeas corpus before this Court. The library does not have a copy
3  machine, and access to the only copier available on the facility has been a continuous issue,
   causing significant delays in legal duplication services.

4    fn2) Currently, the lockers in the unit where Plaintiff is housed (Dorm#408), well exceed the
   6 cubic feet of storage space referenced in CCR regulations. There are other units on the facility
5  however whose capacity is less than half of that currently used by Plaintiff. Should Plaintiff
   be relocated to another housing unit, he would need to discard approximately two thirds (2/3)
6  of his legal materials.

7    fn3) DOM§54030.10.2 further obfuscates matters by including mandatory language, such as, a
   suitable area designated by the Warden shall be reserved for the storage of excess legal materials,
8  with a log record of all prisoner access times and dates being required, with staff setting
   appointments to access those materials, which shall occurr one time per week (Id.)
9

10         - - - - - - - - - -END OF FOOTNOTES- - - - - - - - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 //

Request For TRO/Injunction           - 8 of 9 -
ND Cal C07-3575 MHP

## DECLARATION

Plaintiff, Francois P. Givens, does hereby declare under penalty of perjury by the laws of the United States that all information presented in this declaration and request for TRO/Injunction is, to the best of his knowledge, TRUE and ACCURATE.

1) On 4-8-08 at approximately 5:40 p.m., Plaintiff attempted to approach the law library on Facility IV at CRC, for his scheduled 5:30 appointment. Plaintiff was approached by Officer M.Quezada who asked Plaintiff if he was assigned to the law library as a clerk. Plaintiff informed the officer that he was not a clerk, but was a priority legal user, and was attempting to perform research in litigation against that officer's boss, James Tilton. The officer continued to question Plaintiff as to why he was attempting to enter the law library, when his supervisor approached, Lt. Bandholtz. While talking to the two officers, the Senior Librarian for the Facility informed the officers that Plaintiff was scheduled for 5:30 in the law library, and that the he had been held up from opening the library on time. The Lieutenant informed the Plaintiff that the facility requires all prisoners to obtain a pass to enter the law library from their housing unit officer. After obtaining a pass from his housing unit, and returning to the law library, the Senior Librarian S.Swafford, informed Plaintiff that he was unaware that all inmates had to have a pass to enter the law library.

2) On 4-20-08 at approximately 6:00 p.m., two of the inmates whom Officer J.Jones accused the Plaintiff of assisting in the filing of grievances against the officer, were moved to another housing unit on the facility. To the best of Plaintiff's knowledge, the moves were not requested by those inmates.

SWORN TRUE ON THIS 20th DAY OF April          , 2008 IN NORCO, CALIFORNIA

X _____
Francois P. Givens, #T-86266
Plaintiff, In Pro Se.

//

Request For TRO/Injunction                    - 9 of 9 -
ND Cal C07-3575 MHP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GIVENS v. TILTON, et al.,
C07-3575 MHP (PR)

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify under penalty of perjury by the laws of the United States that all information presented in this certificate of service is, to the best of his knowledge, TRUE and ACCURATE.

I am an adult citizen of the United States, currently incarcerated at the CRC in Norco, Ca. On this day, I did personally place either original or exact copies of the following document:

a) Request for temporary restraining order/Preliminary and permanent injunction;

in envelopes with sufficient postage, addressed as follows:

1) Office of the Clerk
US District Court (ND Cal)
450 Golden Gate Ave.
San Francisco, Ca., 94102

2) Office of the Attorney General
Edmund G. Brown - Attorney General
P.O. Box 944255
Sacramento, Ca., 94244-2550

3) Office of the Attorney General
455 Golden Gate Ave., Suite#11000
D.Robert Duncan - D.A.G
San Francisco, Ca., 94102

These envelopes were given to a correctional officer to log in accordance with outgoing legal mail procedures established at the institution, on this day.

SWORN TRUE ON THIS 24th DAY OF April, 2008 IN NORCO, CALIFORNIA.

X _____
François P. Givens,#T-86266
CRC
P.O. Box 3535
Norco, Ca., 92860
Plaintiff, In Pro Se.

Request for TRO/Injunction           - iii -
ND Cal C07-3575 MHP