

1  Francois P. Givens,#T-86266
2  California Rehabilitation Center
   P.O. Box 3535
3  Norco, Ca., 92860
   Plaintiff, In Pro Se.

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  FRANCOIS P. GIVENS,            ) Case No: C07-3575 MHP (PR)

12      Plaintiff,                 ) RE-NOTICE OF REQUEST FOR SUMMARY JUDGMENT

13  v.                             ) BY PLAINTIFF

14  JAMES TILTON, et al.,          ) (FRCivP 56)

15      Defendants.                )
    _____)

16

17               THE HONORABLE MARILYN H. PATEL

18           CHIEF JUDGE, NORTHERN DISTRICT OF CALIFORNIA

19

20

21

22

23

24

25

26

27

28  Re-Notice/Request For Summary Judgment
    ND Cal C07-3575 MHP

1

# TABLE OF CONTENTS

2

Table of Authorities ............................................ii
Table of Cases ...........................ii - iii
3

Nature of Request ............................1
Undisputed Statement of Facts ...............1 - 7
4

Allegations ............................7
Points and Authorities
5

   I. PARTIAL SUMMARY JUDGMENT IS AVAILABLE WHERE THERE IS NO TRIABLE ISSUE OF

      MATERIAL FACT PERTAINING TO A CLAIM ...............7 - 8
6

7

   II. DEFENDANTS HAVE WAIVED DEFENSES TO CHALLENGE THE SUFFICIENCY OF THE

      SERVICE OF PROCESS ...............8 - 10

8

   III. DEFENDANTS FAILURE TO TIMELY RESPOND TO DISCOVERY REQUESTS

      ADMITS MATTERS RELEVANT FOR SUMMARY JUDGMENT ...............10 - 13
9

10

   IV. DEFENDANTS HAVE RETALIATED AGAINST THE PLAINTIFF IN VIOLATION

      OF THE FIRST AMENDMENT ...............13 - 15

11

Conclusion ............................15
Prayer For Relief ............................15
12

Footnotes ...............15 - 17
Declaration ...............17 - 18
13

Certificate of Service ............................iv
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

California

3

Code of Regulations
1) Title 15, §3084.5(a)(3)(D) . . . . . . . . . .4

4

Federal

5

Federal Rules of Appellate Procedure
6    1) Rule 23 . . . . . . . . . .17

7

Federal Rules of Civil Procedure
1) Rule 4(a) . . . . . . . . . .9
8    2) Rule 4(c)(2) . . . . . . . . . .9
3) Rule 12(a)(1)(A) . . . . . . . . . .9
9    4) Rule 33(b)(3) . . . . . . . . . .10
5) Rule 36(a) . . . . . . . . . .10
10    6) Rule 37(b)(2)(A) . . . . . . . . . .10
7) Rule 56 . . . . . . . . . .8

11

Federal Rules of Evidence

12
1) Rule 301 . . . . . . . . . .11
13    2) Rule 401 . . . . . . . . . .11

14

TABLE OF CASES

15

California

16
1) People v. Hanson(2000)23 Cal.4th 355 . . . . . . . . . .15

17

District Courts(9th Circuit)
18    1) Franklin v. Duncan(ND Cal 1995)891 F.Supp 516 . . . . . . . . . .17
2) Gerlinger v. Amazon.Com,Inc(ND Cal 2004)311 F.Supp.2d 838 . . . . . . . . . .8
19    3) Hensala v. Dept of Air Force(ND Cal 2001)148 F.Supp.2d 988 . . . . . . . . . .11
4) Medrano v. D'Arrigo Brothers Co. of California(ND Cal 2004)336 F.Supp.2d 1053 . . . . . . . . . .8
20    5) National Association of Radiation Survivors v. Turnage(ND Cal 1987)115 FRD 543 . . . . . . . . . .16
6) Pratt v. Rowland(ND Cal 1994)856 F.Supp 565 . . . . . . . . . .16
21    7) Switchmusic.com,Inc v. US Music Corp(CD Cal 2006)416 F.Supp.2d 812 . . . . . . . . . .11
8) Walker & Zanger(West Coast) Ltd v. Stone Design S.A(CD Cal 1997)4 F.Supp.2d 931 . . . . . . . . . .8
22    9) Wham-O,Inc v. Sport Dimension, Inc(ND Cal 2005)398 F.Supp.2d 1081 . . . . . . . . . .8

23

Court of Appeals(9th Circuit)
1) Akonia v. US(1991)938 F.2d 158 . . . . . . . . . .16
24    2) Benny v. Pipes(1986)799 F.2d 489 . . . . . . . . . .9
3) Bruce v. Ylst(2003)351 F.3d 1283 . . . . . . . . . .14
25    4) Chiliky v. Schweiker(1986)796 F.2d 1131 . . . . . . . . . .8
5) Hadley v. US(1995)45 F.3d 1345 . . . . . . . . . .10
26    6) Marino v. Vasquez(1987)812 F.2d 499 . . . . . . . . . .17
7) Mendicino Environmental Center v. Mendicino County(1999)192 F.3d 1283 . . . . . . . . . .14
27    8) Lands v. Deeds(1989)878 F.2d 318 . . . . . . . . . .14
9) Rhodes v. Robinson(2004)408 F.3d 559 . . . . . . . . . .14
28    10) Schroeder v. McDonald(1995)55 F.3d 454 . . . . . . .11,14

1

Court of Appeals(Other Circuits)
   1) Benson v. Cody(CA7 1985)761 F.2d 335 .......... 13
    2) Buise v. Hawkins(CA7 1978)584 F.2d 223 .......... 13
   3) Crawford-El v. Britton(CADC 1996)93 F.3d 813 .......... 14
   4) McDonald v. Hall(CA1 1978)610 F.2d 16 .......... 16
   5) Pennzoil Co. v. F.E.R.C(CA5 1986)789 F.2d 1128 .......... 11
   6) Smith v. Maschner(CA10 1990)899 F.2d 940 .......... 11
   7) Thorn v. Jefferson-Pilot Life Insurance Co.(CA4 2006)445 F.3d 311 .......... 11
   8) US v. Kasuboski(CA7 1987)834 F.2d 1345 .......... 11

Supreme Court
   1) Anderson v. Liberty Lobby,Inc(1986)477 US 242 .......... 8
   2) Celotex Corp v. Catrett(1986)477 US 317 .......... 8,15
   3) Grant v. Phoenix Mutual Life Insurance Co.(1887)121 US 105 .......... 10
   4) Jeffers v. US(1977)432 US 137 .......... 15
   5) Johnson v. Avery(1969)393 US 483 .......... 11
   6) McKune v. Lile(2002)536 US 24 .......... 16
   7) Mississippi Publishing Corp v. Murphee(1946)326 US 438 .......... 9
   8) Murphy Brothers,Inc v. Michetti Pipe Strining,Inc(1999)526 US 344 .......... 9
   9) NHL v. Metropolitan Hockey Club,Inc(1976)427 US 639 .......... 10
   10) Wolff v. McDonnell(1974)418 US 539 .......... 14

Reference
   1) McCormick's Handbook of the Law of Evidence,§345(A) .......... 11
   2) The Myth of Humane Imprisonment: A Critical Analysis of
     Severe Discipline in Maximum Security Prisons (Mark Hamm,Therese Coupez, et al.) .......... 17

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nature of Request

1    PLEASE TAKE NOTICE that on 12-19-07, Plaintiff, Francois P. Givens, did request that this Court,
2    pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (FRCP), orders SUMMARY JUDGMENT
3    in favor of the Plaintiff and against, at a minimum, Defendants Tilton, Nollette and Ayers (Warden,
4    SOSP) on the second cause of action for the operative complaint in this case, retaliation against
5    the Plaintiff for his filing of lawsuits and grievances. In the alternative, Plaintiff request
6    that this Court grants SUMMARY JUDGMENT on all cognizable claims stated by the Plaintiff in this
7    action.

8    This request is made on the ground that there is no genuine triable issue regarding material
9    facts which otherwise establish Defendant's liability, and the Plaintiff is entitled to summary
10   judgment as a matter of law.

11   This motion is submitted on the following undisputed statement of facts, exhibits,
12   interrogatories, request for admissions, declaration of Plaintiff and the record in this case.

Undisputed Statement of Facts

13   The following facts are either: (1) undisputed; (2) easily authenticated;
14   or (3) are of such a nature that a reasonable trier of fact would not conclude
15   otherwise.

16   1) On 6-16-07 in San Francisco Superior Court (SFSC) Case#184987, the
17   Plaintiff was resentenced by his criminal trial court, which vacated Plaintiff's
18   conviction on Count I (attempted voluntary manslaughter), stayed punishment
19   on Count III (aggravated assault with a deadly weapon), and reduced Plaintiff's
20   restitution from $600 to $200 dollars.

21   2) ON 7-11-07, the Plaintiff was transferred from the county jail with
22   $174.37 in funds being received by Receiving and Release (R&R) at San Quentin
23   State Prison (SOSP) on that day (see Appendix of Exhibits, Complaint at 5).

1  In addition to those funds, the Plaintiff was also in possession of (1) box

2  of legal materials (Id., at 45).

3      3) On the day of his arrival at SQSP, the legal materials were confiscated

4  and on 7-14-07, the materials were placed in (2) separate boxes and released

5  to the Plaintiff by C/O Mannix (Id., at 43). According to a 7-18-07 SQSP Inmate

6  Trust Account Statement, the Plaintiff's funds were not deposited into his

7  account at SQSP (Id., at 6).

8      4) Pursuant to admissions by Defendant Tilton (see 11-20-07 Motion to Compel

9  Answer, Appx "D" of Exhibits at 10-13), on 7-11-06, the PLaintiff was placed

10 in Administrative Segregation (Ad-Seg) by Defendant Nollette, instead of being

11 housed on a "Special Needs Yard" (SNY) commensurate with his classification

12 status. Because Defendant Nollette failed to respond to interofatories (Appx

13 "G" at 63-67), he conceded the fact that SQSP does not provide reasonable

14 accomadations for mobility impaired prisoners who are being placed in Ad-Seg

15 (Id., at 2:8-11), and that Defendant Nollette was responsible for arranging

16 for the Plaintiff to be housed in Cell #1D-047, after Nollette stated that

17 he may have to "sue" the Plaintiff (Id., at 2:13-25).

18     5) In a sworn affidavit by Edmond Givens (Appx "A" at 1-13), the Plaintiff's

19 father gave testimony as to how CDCR officer and private person(s) working

20 in conjunction with that officer threatened to kill the Plaintiff and his entire

21 family because the affiant was assisting the Plaintiff to file litigation

22 against that officer (Id., at 2:17-23). Affiant has direct personal knowledge

23 of how CDCR has retaliated against the Plaintiff since 2004, and he has also

24 filed his own complaint(s) with CDCR's Office of Internal Affairs (Id., at

25 6-13). Affiant also has direct personal knowledge of how Plaintiff's legal

26 materials were retained at SQSP upon Plaintiff's 7-26-06 transfer to CSATF/SP

27 (Id., at 3:22-4:4), and has logged telephone communications between the period

28 of 7-26-06 to 8-21-06 when affiant attempted to assist the Plaintiff in locating

1    his legal supplies which were retained at SQSP on 7-26-06 (Id., at 12-13).

2    6) Before the 7-26-06 transfer, Sonnie J. Franklin, who has assisted the

3    Plaintiff with his legal filings since 2002, attempted to mail legal materials

4    to the Plaintiff at SQSP. Those legal materials also remained at SQSP upon

5    Plaintiff's transfer. After contacting both SQSP and CSATF/SP to locate the

6    Plaintiff's mail. Legal property and funds, Ms Franklin submitted a complaint

7    entitled "Mailholding-Transfer From SQSP" (Appx "B" at 15-21) with a sworn

8    affidavit in it's support (Appx "B" at 22-29) to the Office of the California

9    Attorney General, with a copy being served upon, inter alios, Defendant Tilton.

10   On 9-21-06, CDCR responded to the complaint, stating that Ms Franklin's claims

11   were not substantiated, and the findings were being forwarded to Warden Ken

12   Clark at CSTAF/SP (Appx "B" at 30). On 10-2-06, the Attorney General also

13   responded to the complaint, stating that the matter was being refered to the

14   Office of the Inspector General (Appx "B" at 31).

15   7) Notwithstanding the trial court's reduction of Plaintiff's restitution

16   from $600 to $200 dollars on 6-16-07, on 7-26-06, Defendant S.Mendonca created

17   a non-existant court case (SFSC #184987A) in order to impose an additional

18   $200 dollar restitution fine upon the Plaintiff, rather than "modifying" the

19   existing records to reflect the correct amount owed by the Plaintiff (Appx

20   of Exhibits, Complaint at 44). On 8-27-06, Plaintiff submitted a habeas corpus

21   to the trial court, with the sole ground for relief being, "[t]he petitioner

22   is currently being punished in violation of State and Federal double jeopardy

23   clauses and California Penal Code Section 654. Petitioner seeks the removal

24   of the excessive portion of his punishment" (fn1).

25   8) On 1-20-07 in First Appellate District Court (FADC) Case#A116196, the

26   state appellate court requested an informal response from the Attorney Geneeral

27   to Plaintiff's claims that "restitution" was not a condition of confinement

28   which required administrative exhaustion and, under a futility exception, the
     REquest For Summary Judgment        - 3 of 18 -
     ND Cal CO7-3575 MHP

1  Plaintiff was not required to exhaust administrative remedies regarding
2  restitution before seeking relief in the trial court. In the Attorney General's
3  3-6-07 response (Appx "C" at 33-38), Deputy Attorney General Patricia Webber-
4  Heim argued: (1) the petition should be denied because the Plaintiff failed
5  to exhaust administrative remedies; and (2) because Plaintiff's trust account
6  had been properly updated and funds in excess of that amount had been paid
7  back into the account, there was no relief available for the court to grant.
8  In arguing non-exhaustion, the deputy A.G argued that the 8-20-06 appeal
9  submitted by the Plaintiff to SQSP was properly rejected because the Plaintiff
10 failed to prove that he received an informal response to the appeal (Id., at
11 34) and that the Plaintiff failed to pursue the grievance further (Id., at
12 35).

13 9) The 8-20-06 inmate appeal to which the Deputy A.G referred was a citizen's
14 complaint against the Warden at SQSP for: (1) his failure to train subordinate
15 officers and (2) promulgating a policy/custom at SQSP which allows subordinate
16 officers to embezzle funds from inmate trust accounts (Appendix, Complaint
17 at 2). While provisions of CDCR's Departmental Operational Manual (DOM) states
18 that citizen complaints against CDCR personnel bypass the informal level of
19 review, Title 15 of the California Code of Regulations (CCR)§3084.5(a)(3)(D)
20 states that appeals addressing departmental regulations, policies or operational
21 procedures also bypass the informal level of review. After the appeal was
22 improperly rejected on 9-6-06 (appendix, Complaint at 1), the Plaintiff
23 resubmitted the appeal on 9-19-06, attempting to clarify the fact that an
24 informal level response was neither required nor appropriate (Id., at 10-11).
25 After failing to receive a response from CDCR within time limitations, on 11-
26 13-06 the Plaintiff attempted to file the appeal at the Second Level of Review
27 (Id., at 12-15). Again the Plaintiff waited for a response, and on 1-2-07,
28 the Plaintiff submitted the appeal for Director's Level review (Id., at 16-

1  19) **(fn2)**. On 5-23-07, the Director's Level Appeal was returned unprocessed
2  to the Plaintiff, because it had not been processed at the lower levels of
3  review (Appx "D" at 40-44).

4      10) On 8-9-07, this Court held that the Plaintiff had stated (3) cognizable
5  claims against the Defendants in this action: (1) defendants improperly
6  appropriated money from the Plaintiff's trust account; (2) defendants retaliated
7  against the Plaintiff for his filing lawsuits and confiscated his legal
8  materials; and (3) defendants subjected Plaintiff and other similarly situated
9  African-Americans to "inhumane" living conditions (8-9-07 order, this action).
10  Summons issued for Defendants Tilton, S.Mendonca and Sergeant Nollette on 8-
11  17-07 **(fn3)**.

12      11) On 8-13-07, (4) days after this Court ordered service of process,
13  CSATF/SP Correctional Counselor Villarial informed the Plaintiff that per
14  "Sacramento", he qualified for a mandatory transfer to a new men's SNY facility
15  at the California Rehabilitation Center (CRC). The Plaintiff protested the
16  transfer, submitting an "in absentia written request" to his counselor and
17  the classification committee, explaining how the transfer would adversely affect
18  his rehabilitation, security and pending litigation in the federfal courts
19  (Appx "E" at 46-47). The plaintiff was endorsed for transfer on 8-24-07.

20      12) On 9-6-07 at approximately 8:00 a.m., CSATF/SP A-yard Lt. Snell informed
21  Plaintiff's Housing Unit Officer (Hill) that the Plaintiff had "excessive"
22  legal materials in his living quarters which he would have to discard. Shortly
23  thereafter (1 hour later), officers instructed the Plaintiff and numerous other
24  prisoners to "transpack" all of their property in preparation for transfer
25  to CRC. Plaintiff's property, including legal materials from his living quarters
26  was placed in an unsecured storage closet overnight, and taken to R&R at CSATF
27  on the following day for inventory.

28  //

13) On 9-7-06, I/M Louis Frequez,#E-26812, who was housed on the B-yard facilty with the Plaintiff from 2003 to 2004, and who was also known as a "jailhouse lawyer", was placed on the A-yard facility at CSATF. Both the Plaintiff and Fesquez frequently litigated against CDCR and after the Plaintiff reported an incident of excessive use of force upon Fresquez to the Kings County District Attoreny, naming specific CDCR officers, acts of retaliation against the Plaintiff increased at the institution (Appx "F" at 49-54).

14) On 9-8-07, I/M David Arrietta informed the Plaintiff that his name did not appear on the 9-6-07 transpack list, but it did appear on a list which had just came out that morning (9-8-07).

15) ON 9-10-07, the Plaintiff and numerous other inmates were transferred from CSATF to CRC. Upon Plaintiff's arrival, CRC R&R Officer Bender informed the Plaintiff that he had "excessive" legal materials which CRC would not store, and the Plaintiff would have to discard. When the Plaintiff informed the officer that he wanted to be transferred to an institution which would allow the Plaintiff to store his legal materials, the officer stated that the Plaintiff would have to be placed in Ad-seg at the prison in Chino, Ca, and if that were to happen, the Plaintiff would never see his legal materials again. The issue was brought before Sgt Bystrum, who stated that the facility Captain would address the issue of "excessive legal material" on the following day (fn4).

16) On 9-11-07, Lt. Clark informed the Plaintiff that the men's facility at CRC would do their part to insure that the Plaintiff retained acess to legal materials in compliance with the Code of Regulations. After Lt. Clark spoke with R&R Officer McSherry, the Plaintiff was informed by McSherry that R&R at CRC would store the Plaintiff's legal materials.

17) On 11-13-07, the Plaintiff received defendant's 11-6-07 request for an extension to file dispositive motion / waiver of reply / demand for jury trial for this action. On 11-14-07, the Plaintiff requested access to his legal materials stored in R&R in order to prepare for motions and possible trial. The Plaintiff was informed that the officer responsible for storage in R&R, Officer Schmidt, was not there, and would return to work on 11-15-07.

18) On 11-15-07 at approximately 10:00 a.m., R&R Officer Schmidt informed Dorm #408 Officer Reid that R&R would no longer store the Plaintiff's "excessive" legal materials. At 10:30 a.m.,

1  facility Sgt Moralez delivered the (6) boxes of legal materials to the Plaintiff, stating that

2  CRC would no longer store the legal materials. The issue was brought before the acting facility

3  captain, CCII[1] Verdugo, who affirmed the fact that the Plaintiff would have to discard the legal

4  materials which were in excess of allowable limits. The Plaintiff then contacted his father, who

5  called the Defendant's attorney for this action, Deputy Attorney General D.Robert Duncan, alerting

6  the attorney to the pending spoliation of evidence for this case by CDCR. No action was taken to

7  stop the spoliation of evidence by the defendants (fn5).

8      19) On 11-16-07 at 12:45 p.m., the (6) boxes of legal materials were given to R&R Officer

9  Salazar to send to the Plaintiff's home. On 12-5-07, Sonnie J. Franklin informed the Plaintiff

10 that the boxes had arrived on 12-3-07. Plaintiff has instructed Ms Franklin not to disturb the

11 contents of the boxes, which the Plaintiff will present as evidence should this matter go to trial,

12 as demanded by the Defendants.

13

14 Allegations

15     Based on the record in this case, admissions and interrogatories and other evidence presented

16 in this request, the Plaintiff does hereby make the following allegations:

17     1) Since 2004, the Plaintiff has been labeled as a "jailhouse lawyer" by CDCR;

18     2) Because Plaintiff is known by CDCR as a "jailhouse lawyer", he is at an increased risk to
          experience retaliation by CDCR, its officers, agents, employees and representatives;

19

20     3) The (3) cognizable claims in this action are a direct result Plaintiff's reputation as a
          "jailhouse lawyer" and retaliation against him for his exercise of the First Amendment rights

21        to petition for redress of grievances and to file lawsuits; and

22     4) The 9-10-07 transfer of the Plaintiff and 11-16-07 spoliation of evidence for actions
          currently pending before this Court is a continuous violation of Claim 2 in this action.

23 Points and Authorities

24 I. PARTIAL SUMMARY JUDGMENT IS AVAILABLE WHERE THERE IS NO TRIABLE ISSUE OF MATERIAL FACT PERTAINING
25    TO A CLAIM

26     A. Standard – Summary Judgment

27     ..."Federal Rule of Civil Procedure 56(c) provides that summary judgment should be rendered
       "if the pleadings, depositions, answers to interrogatories, and admissions on file, together
28     with the affidavits, if any, show that there is no genuine issue as to any material fact and

1  that the party is entitled to judgment as a matter of law" (FRCP 56(c)). An issue of fact is
2  genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving
   party (see Anderson v. Liberty Lobby, Inc(1986)477 US 242,248-249). "The mere existence of a
3  scintilla of evidence...will be insufficient; There must be evidence on which the jury could
   reasonably find for the [nonmoving party]" (Id., at 252)"...Wham-O,Inc. v. Sport Dimension,Inc
4  (ND Cal 2005)398 F.Supp.2d 1081,1084.

5  "[U]nder FRCP 56, summary judgment shall be granted "against a party who fails to make a showing

6  sufficient to establish the existence of an element essential to that party's case, and on which

7  that party will bear the burden of proof at trial...since a complete failure of proof concerning

8  an essential element of the nonmoving party's case necessarily renders all other facts immaterial"

9  (Celotex Corp v. Catrett(1986)477 US 317,322-323, quoted in Gerlinger v. Amazon.com, Inc (ND Cal

10  2004)311 F.Supp.2d 838,844). While the moving party bears the initial burden of identifying portions

11  of the record which demonstrate an absence of a genuine issue of material fact, the burden then

12  shifts to the nonmoving party to "[g]o beyond the pleadings, and by [its] own affidavits, or by

13  'depositions, answers to interrogatories, or admissions on file', designate specific facts showing

14  there is a genuine issue for trial' " (Celotex, 477 US at 324). This same standard for summary

15  judgment applies to request for partial summary judgment (see Medrano v. D'Arrigo Brothers Co.

16  of California (ND Cal 2004)336 F.Supp.2d 1053,1056).

17

18  Accordingly, this Court has full authority to grant full or partial summary judgment in this

19  case.

20

21  II. DEFENDANTS HAVE WAIVED DEFENSES TO CHALLENGE THE SUFFICIENCY OF SERVICE OF PROCESS

22  A.Standard - Waiver of Defect in Service of Process

23  ..."[D]efendant may waive defects in service of process" (Walker & Zanger(West Coast) Ltd. v.
   Stone Design S.A (CD Cal 1997)4 F.Supp.2d 931). A "[p]arty who files preanswer motion without
24  raising specific defense of lack of personal jurisdiction, improper venue, insufficiency of
   process, or insufficiency of service of process, waives omitted defense in his answer or
25  otherwise"...Chiliky v. Schweiker(C.A.9 1986)796 F.2d 1131.

26  On 8-9-07, this Court ordered the issuance of summons and service of process (summons and

27  complaint) by the US Marshals against named defendants in this action, while simeltaneously

28  authorizing discovery to be conducted by the parties in this action (see Docket#7, this case).

1   "[S]ervice of process, under longstanding tradition in our system of justice, is fundamental to

2   any procedural imposition on a named defendant (Murphy Bros.,Inc v. Michetti Pipe Stringing,Inc

3   (1999)526 US 344,350). Once proper service of summons is accomplished, "[a] court asserts

4   jurisdiction over the person of the party served" (Mississippi Publishing,Corp. v. Murphee(1946)326 US

5   438,444-445). Accordingly, [[o]ne becomes a party officially, and is required to take action in

6   that capacity" upon service of summons or other authority-asserting measure stating the time within

7   which the party served must appear and defend (Id.,526 US at 350; see also FRCP 4(a) and 12(a)(1)(A)).

8      On 8-17-07, this Court issued summons and, to the best of the Plaintiff's knowledge, the summons

9   and complaint were served upon named defendants in this action by the US Marshals (see FRCP 4(c)(2)

10  [Court must appoint US Marshal to serve summons when plaintiff is authorized to proceed in forma

11  pauperis]). According to this Court's docket listing, the summons as to Defendant S.Mendonca was

12  returned to the Court unexecuted on 9-12-07 (Docket#11). It is on this information that the Plaintiff

13  believes that proper service of summons and complaint was accomplished upon the remaining defendants

14  in this action, since their summons were not returned to the court by the US Marshals. Hence, there

15  is an assumption that Defendants Tilton and Nollette were properly within this Court's jurisdiction

16  before 9-12-07.

17     In Defendant Nollette and Tilton's 11-6-07 preanswer motion, the defendants acknowledged this

18  Court's 8-9-07 order, which was entered on 8-10-07, which did order the US Marshals to serve the

19  summons and complaint upon named defendants and for the defendants to file a dispositive motion

20  by 11-8-07. In the defendant's 11-6-07 preanswer motion, the defendants did not challenge the

21  sufficiency of service of process, despite acknowledging when it was ordered, instead electing

22  to waive their right to answer the complaint, demanded a jury trial and gave notice of their intent

23  to extend the filing deadline for their dispositive motion (Id., at 1-2). The failure to challenge

24  the sufficiency of service of process should prove fatal to any attempt by the defendants to assert

25  any sucg defense (see Benny v. Pipes(C.A.9 1986)799 F.2d 489,492 [A general appearance or responsive

26  pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service

27  of or personal jurisdiction]).

28  //
    Request For Summary Judgment                    - 9 of 18 -
    ND Cal C07-3575 MJJ

1     Accordingly, defendants may not argue that this Court did not have personal and subject matter

2 jurisdiction over the Defendants before 9-12-07.

3

4 III. DEFENDANTS FAILURE TO TIMELY RESPOND TO DISCOVERY REQUESTS ADMITS MATTERS RELEVANT FOR

5      SUMMARY JUDGMENT

6     At or around the time which the US Marshals served summons and complaint upon named defendants,

7 the Plaintiff began the discovery process, as authorized by this Court's 8-9-07 order. The Plaintiff

8 served the following discovery requests upon named defendants on the dates listed below:

9     1) Request for Production (Set 1) James Tilton         8-26-07;
    2) Written Interrogatories (Set 1) James Tilton     9-20-07 (Appx "G" at 56-62);

10     3) Written Interrogatories (set 2) Sgt Nollette     9-24-07 (Appx "G" at 63-67);
    4) Written Interrogatories (Set 3) S.Mendonca     9-26-07; and

11     5) Request For Admissions (Set 1) James Tilton     10-15-07 (Motion to Compel Answer,
                                         Appx "D" of Exhibits at 10-13).

12

13     Pursuant to FRCP 33(b)(3), answers or objections to interrogatories must be served upon the

14 requesting party within (30) days, establishing 10-20-07 and 10-24-07 deadlines for Defendants

15 Tilton and Nollette, respectively, to respond to Sets 1 and 2 of Plaintiff's interrogatories.

16 Pursuant to FRCP 36(a), parties must also respond to request for admissions within (30) days,

17 establishing 11-14-07 as the deadline for Defendant Tilton to respond to Plaintiff's request for

18 admission. Both Defendants Tilton and Nollette failed to meet the deadlines imposed by the Federal

19 Rules of Civil Procedure.

20     While FRCP 36(a) provides that each matter in a request for admissions is deemed admitted unless

21 written response or objection is provided within (30) days of a request, federal courts have long

22 held that the failure to respond to interrogatories is sanctionable conduct (see Grant v. Phoenix

23 Mutual Life Insurance Co(1887)121 US 105; NHL v. Metropolitan Hockey Club,Inc(1976)427 US 639).

24 FRCP 37(b)(2)(A) authorizing, inter alia, the sanction of admission for matters which a party failed

25 or refused to answer, and such admission may be used by a court to grant summary judgment (Hadley

26 v. US(C.A.9 1995)45 F.3d 1345,1348).

27

28 //
    Request For Summary Judgment          - 10 of 18 -
    NO Cal C07-3575 MJJ

1
2
3
4

...."The Court finds that plaintiff's use of default admissions is proper for additional reason that parties cannot "attack issues of fact established in admissions by resisting a motion for summary judgment" (US v. Kasuboski(C.A.7 1987)834 F.2d 1345,1350). Courts have held that "affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions (Id.)"...quoted in Switchmusic.com,Inc v. US Music Corp (CD Cal 2006)416 F.Supp.2d 812,818.

5  "Relevant evidence" means evidence having **any** tendency to make the existence of any fact that
6  is of consequence to the determination of the action more probable than it would be without the
7  evidence (Federal Rule of Evidence (FRE)401). Because of the close proximity of Plaintiff's
8  protected activity of pursuing civil rights and habeas litigation in this Court (Schroeder,infra.,
9  55 F.32d at 461; Avery,infra , 393 US 483), and the defendants' retaliatory transfer of Plaintiff,
10  (fn6), and subsequent spoliation of Plaintiff's evidence to support Plaintiff's pro se litigation
11  in this Court (fn7), this Court should draw an adverse inference against the Defendants regarding
12  their motive(s) for their actions being retaliatory (Cf.,Smith v. Maschner(C.A.10 1990)899 F.2d 940[1]
13  [allegations of retaliation may be supported by circumstantial evidence]), thus leading to the
14  natural presumption that Plaintiff's allegations in this action are true.

15  "[A] presumption imposes on the party against whom it is directed the burden of going forward
16  with evidence to rebut or meet the presumption" (FRE 301). "[A] presumption arises when proof of
17  one fact gives rise to a natural inference that another fact is tyrue and proof of the second fact
18  is difficult to obtain" (Thorn v. Jefferson-Pilot Life Insurance Co.(C.A.4 2006)445 F.3d 311).
19  As stated by one leading scholar:
20  ...."[p]resumptions are frequently created in instances in which basic facts raise a natural
inference of the presumed fact". This natural inference may be sufficient to create a fact
21  question, "despite the existence of contrary evidence and despite the resultant destruction
of the presumption,...not because of the presumption, but because of the natural inference
22  flowing from the plaintiff's showing"...McCormick's Handbook of the Law of Evidence,§345(A)
at 821; Pennzoil Co. v. F.E.R.C(C.A.5 1986)789 F.2d 1128.

23  This Court has held that parties are entitled to summary judgment on irrebuttable presumption
24  (Hensala v. Dept of Air Force(ND Cal 2001)148 F.Supp.2d 988). Plaintiff asserts that his 1-10-05
25  "Request For Transfer" addressed to former CSATF Warden Derral G. Adams, clearly documents CDCR's
26  harassment/retaliation against the Plaintiff since 2004 (Appx "F" at 49-54), and constitutes
27  "continuing violations" of Plaintiff's First Amendment rights and, the resulting 9-10-07 transfer
28  and 11-16-07 spoliation of evidence creates an "irrebutable presumption" sufficient to grant summary

1 | judgment on, at a minimum, Claim 2 for this action.

2 | In supporting Plaintiff's allegations in this matter, and because of Defendant's default in

3 | failing to timely respond to discovery requests, all matters in Set 1 of Interrogatories (Defendant

4 | Tilton) should be deemed true for the purposes of this action. These include, but are not limited

5 | to , the following:

6 | 1) Defendant Tilton did not have an established criteria for selection of prisoners for transfer to the new men's facility at CRC (Appx "G" at 57:4-7);

7 |

8 | 2) CDCR did retaliate against the Plaintiff by reducing the hours of operation for the A-yard law library at CSATF/SP after learning of Plaintiff's pending deadline in C.A.9 Docket #07-16298 (Id., at 57:9-22);

9 |

10 | 3) Defendant Tilton was properly served summons and complaint by the US Marshals (Id., at 57:30-58:2);

11 | 4) Plaintiff's 9-10-07 transfer was proximately caused by this Court's issuance of the 8-9-07 Order to Show Cause (OSC) in C07-1448 MJJ and the 8-9-07 order of service of process upon

12 | the defendants in this case (Id., at 58:4-15), and was a collusive effort by state actors to defeat Plaintiff's ability to address "death threats" made against Plaintiff and his family

13 | on appeal in the 9th Circuit (Id., at 58:17-59:9); and

14 | 5) The decision to transfer the Plaintiff was a collusive retaliatory effort by state actors to separate Plaintiff from his legal materials and to obstruct his access to the courts in

15 | federal pro se litigation (Id., at 59:11-61).

16 | This Court should also deem all matters contained within Set 2 of Interrogatories (Defendant

17 | Nollette) admitted. These include, but are not limited to the following:

18 | 1) Defendant Nollette was directly responsible for failing to act as a competent "bailee" (PC§ 2085) by "embezzling" or allowing the "embezzlement" of funds from the Plaintiff's trust

19 | account (Appx "G" at 64:4-6);

20 | 2) Defendant Nollette retaliated against the Plaintiff in violation of the Americans with Disabilities Act (ADA) by failing and or refusing to provide the Plaintiff with reasonable

21 | accomodations while he [was][is] mobility impaired (Id., at 64:8-11);

22 | 3) Defendant Nollette did retaliate against the Plaintiff and was directly responsible for, and/or worked in conjunction with state actors by housing the Plaintiff and other similarly

23 | situated African-American prisoners in "inhumane" living conditions while at SCSP (Id., at 64:18-25);

24 |

25 | 4) Defendant Nollette did confiscate Plaintiff's legal materials for the sole purpose of retaliation *** because of Plaintiff's reputation as a "jailhouse lawyer" and his insistence

26 | upon exercising his First Amendment rights (Id., at 64:27-28);

27 | 5) Defendant Nollette has a history of racial discrimination and prejudice against African-Americans and "jailhouse lawyers" (Id., at 64:30-31);

28 | //

Request For Summary Judgment     — 12 of 18 —
ND Cal C07-3575 MJJ

6) Defendant Nollette has information within his personnel file which suggests psychological imbalances, bigotry and or disciplinary action against the state actor (Id., at 65:1-5);

7) Defendant Nollette violated SQSP's Inmate Trust Operations Guide by his failure to act properly as a "bailee", within time limits established by the Operation Guide (Id., at 65:14-28); and

8) Defendant Nollette was directly aware of Plaintiff's 8-20-06 inmate appeal, and, in conjunction with other CDCR personnel, agreed to improperly screen out the appeal, rather than address the issues contained therein (Id., at 66:6-8).

Matters admitted in Set 1 of Request For Admissions (Defendant Tilton) include, but are not limited to the following:

1) The age and general conditions at SQSP create inhumane living conditions, which Defendants have been unwilling or unable to maintain in adequate, functional order (11-20-07 Motion to Compel Answer, Appx "D" at 10:25-11:2);

2) The Plaintiff was housed in Ad-Seg at SQSP instead of the available SNY facility on 7-11-06 out of retaliation by Defendant Nollette, and remained in Ad-Seg upon the recommendation of the classification committee at SQSP (Id., at 11:3-12);

3) SQSP does not provide reasonable accommodations for qualified individuals under the ADA when such individuals are placed in Ad-Seg at the prison (Id., at 11:12-16);

4) From 7-11-06 until 2-14-07, funds from the Plaintiff's trust account were embezzled by the Defendants, and $13.98, which was improperly extracted from the Plaintiff's account on 8-24-07, has not been returned to the Plaintiff (Id., at11:17-12:8); and

5) Defendant Tilton, working in conjunction with subordinate state actors, transferred the Plaintiff from CSATF/SP to CRC against his will, with retaliatory motive, and in violation of FRAP 23 (Id., at 12:1-13) (fn8).

Courts "recog[nize] that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint" (CF., Buise v. Hawkins(C.A.7 1978)584 F.2d 223, [therefore], "courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred" (Benson v. Cody(C.A.7 1985)761 F.2d 335,342). Accordingly, with all evidence considered, and the chronology of events purported within the undisputed statement of facts for this pleading, summary judgment is warranted for the Plaintiff in this case.

IV. DEFENDANTS HAVE RETALIATED AGAINST THE PLAINTIFF IN VIOLATION OF THE FIRST AMENDMENT

A. Standard – First Amendment Retaliation Claim

//

Request For Summary Judgment          – 13 of 18 –
ND Cal C07-3575 MJJ

1   ...'Within the prison context, a viable claim of First Amendment retaliation entails five basic
    elements: (1) An assertion that a state actor took some adverse action against an inmate (2)
2   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
    exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate
3   correctional goal'...Rhodes v. Robinson(C.A.9 2004)408 F.3d 559,567-568.

4      The record for this case clearly establishes that all (5) elements necessary to establish a First

5   Amendment violation have been proven: (1) Defendant Nollette, a state actor, working in conjunction

6   with other state actor(s) did embezzle funds from the Plaintiff's trust account, placed the Plaintiff

7   [and other similarly situated African-American prisoners] in living quarters which were "inhumane"

8   while confiscating Plaintiff's legal supplies and refusing to provide reasonable accommodations for

9   the mobility impaired Plaintiff (2) because of (3) Plaintiff's decision to pursue federal habeas

10  corpus to challenge the remainder of his criminal convictions and plaintiff's reputation as a

11  "jailhouse lawyer", and such action did (4) chill the Plaintiff from addressing Defendant Nollette's

12  actions until he and his legal materials had been safely transferred to CSATF/SP and (5) the actions

13  of the defendants (fn9) failed to advance any legitimate correctional goals, and/or were not tailored

14  narrowly enough to do so.

15     Prisoners have a First Amendment right to file prison grievances (Bruce v. Ylst(C.A.9 2003)351

16  F.3d 1283,1288), as well as the right to pursue both habeas corpus (Wolff v. McDonnell(1974)418

17  US 539,600; Johnson v. Avery(1969)393 US 483) and civil rights litigation (Schroeder v. McDonald

18  (C.A.9 1995 55 F.3d 454,461). Evidence that a state actor informed the Plaintiff that he was famous

19  in prison while doing his "legal stuff" (fn10), and that the filing of Plaintiff's federal habeas

20  corpus "[a]in't gonna happen" (Complaint at 3:20-25) is strong indicum that the subsequent

21  retaliation against the Plaintiff was directly occasioned because of Plaintiff's propensity to

22  file grievances and lawsuits against the Defendants. It is moot for the Defendants to argue that

23  because the Plaintiff attempted to pursue his First Amendment rights that those rights were not

24  chilled:
       ...'First Amendment inquiry asks "whether an official's acts would chill a person of ordinary
25     firmness from future First Amendment activities" (Mendocino Environmental Center v. Mendocino
       County(C.A.9 1999)192 F.3d 1283,1300)...Because "it would be unjust to allow a defendant to escape
26     liability for a First Amendment violation merely because an unusually determined plaintiff
       persists in his protected activity", [plaintiffs] do not have to demonstrate that his speech
27     was "actually inhibited or suppressed" (Crawford-El v. Britton(D.C. Cir 1996)93 F.3d 813,826)"...
       quoted in Rhodes, supra, 408 F.3d at 568-569.
28

1  Facts plead by the Plaintiff along with admissions and interrogatories on file, show that the

2  Plaintiff has proven every element necessary to establish his retaliation claim(s), and that there

3  is no genuine issue of material fact as to the existence of any necessary element, thus entitling

4  the Plaintiff to judgment as a matter of law (Celotex, supra, 477 US at 322).

5

6  Conclusion

7  For the aforementioned reasons, the Plaintiff is entitled to summary judgment as a matter of

8  law, and the relief requested by the Plaintiff should be granted.

9

10  Prayer For Relief

11  WHEREFORE, the Plaintiff PRAYS for the following relief:

12  a) This Court deems all matters in Plaintiff's written interrogatories, Sets 1 and 2, and Request

13  For Admissions, Set 1, as being admitted for the purposes of this action;

14  b) This Court GRANTS summary judgment in favor of the Plaintiff on Claim 2, retaliation against
    the Plaintiff in violation of the First Amendment, or

15  1) In the alternative, this Court GRANTS full summary judgment in favor of the Plaintiff
       on all cognizable claims in this action; and

16

17  c) This Court GRANTS any other and such further relief that this Court deems fair, just and
    or required by law.

18  Date: _May 15, 2008_                    X _____
                                             Francois P. Givens,#T-86266

19                                           Plaintiff, In Pro Se.

20          - - - - - - - - - - -FOOTNOTES- - - - - - - - - - - -

21  fn1) Because "restitution" is "punishment" for the purposes of double jeopardy principles (People
    v. Hanson(2000)23 Cal.4th 355,361; Jeffers v. US(1977)432 US 137,155), and not a condition of

22  confinement, Plaintiff filed his habeas without exhausting administrative remedies. After waiting
    (60) days for the trial court to respond to the petition, the Plaintiff submitted a request for

23  ruling on the writ (SFSC#184987) to Presiding Superior Court Judge Dondero on 11-1-06. Instead
    of assigning the petition to the trial judge, the writ was assigned to Judge James McBride (Writ

24  #5423), who subsequently denied the writ.
    Similarly, on 8-15-06, the Plaintiff also submitted a habeas petition to Marin County Superior

25  Court (#SC149236A), with the sole ground for relief being, "[C]DCR has unconstitutionally abridged
    petitioner's First Amendment right to petition for redress of grievance in various courts", in

26  which Plaintiff sought a court order to compel CDCR (SQSP) to release or replace all court records
    which were contained within the missing boxes of legal materials on 7-26-06.

27

28  //
    Re-Notice/Request For Summary Judgment     - 15 of 18 -
    ND Cal C07-3575 MHP

Because of the spoliation of evidence by Defendants which occured on 11-16-07, various court orders of relevance to this case are no longer available for the Plaintiff to present as evidence in this case. Accordingly, Plaintiff request that this Court, if it deems necessary, takes judicial notice of all state court cases which address the issues presented within this action (California Supreme Court #S-151593; First Appellate District Court Cases A116196 and A116559; SFSC Writ No 5423; Kings County Superior Court Writ#04 W 0039H, order dated 7-10-07), and prior pro se litigation against CDCR (ED Cal#CV-F04-6288 AWI DLB-P, appeal pending in the Ninth Circuit Court of Appeals (Docket#07-17146).

fn2) On 1-18-07, the Plaintiff received a CDC695 Screening form dated 12-28-07, attached to the Second Level appeal (see Appendix of Exhibits, Plaintiff's Reply, FADC#A116196 at 1). The Appeal Coordinator at SQSP stated that the Plaintiff "[m]ust submit a green 602. Additionally, you must start issue on 602", notwithstanding the fact that the "green 602" submitted by the Plaintiff for Second Level Review had been stamped as being recieved by the Appeals Coordinator at SQSP on 12-28-07, the same day that the appeal was rejected (Id., at 4-4a).

fn3) On 9-12-07, the summons upon Defendant S.Mendonca was returned to this Court unexecuted. S.Mendonca, at the time of the events relvant to this case, was a Case Records Analyst at CSATF/SP, and service upon that Defendant at SQSP was not possible. To the best of the Plaintiff's knowledge, service of complaint and summons has not been effected upon S.Mendonca or SQSP Warden Ayers.

fn4) The alleged "excessive legal materials" in the Plaintiff's possession were previously stored by R&R at CSATF/SP from 12-7-05 until Plaintiff's 9-10-07 transfer to CRC.

fn5) The (6) boxes of legal materials contained various documentary evidence for:

a) ND Cal cases C02-4764, C03-1275, C03-1818, C06-2506, C07-1448 and C07-3575 MHJ;
b) SFSC #184987, including juror questionaires, and subsequent direct and collateral challenges to Plaintiff's convictions in state appellate and Supreme court;
c) ED Cal #CV-F04-6288 AWI DLB-P;
d) various habeas challenges to conditions of confinement at SQSP and CSATF/SP.

The majority of attorney communications and court orders/correspondence with the plaintiff in criminal and civil matters [were] in the (6) boxes of legal materials.

fn6) "[C]omplaint alleging that prisoner filed actions against prison officials and assisted other inmates in doing so, that he along with (13) other prisoners were subsequently transferred, and that the decision to transfer him was in retaliation for his litigation activities and exercise of constitutional right to petition courts, stated cause of action under civil rights statute" (McDonald v. Hall(C.A.1 1978)584 F.2d 223; see also Pratt v. Rowland(ND Cal 1994)856 F.Supp 565,569 ["Case law establishes that prison officials may not transfer prisoners solely in retaliation for exercising their First Amendment rights"]; Cf., McKune v. Lile(2002)536 US 24,26 [Transfer of prisoner, not intended as punishment for exercise of constitutional rights, does not implicate Due Process protections]).

fn7) "[G]enerally, trier of fact may draw adverse inference from destruction of evidence relevant to case" (Akonia v. US(C.A.9 1991)938 F.2d 158). "[W]here any party wrongfully denies another the evidence necessary to establish a fact in dispute, court must draw strongest allowable inference in favor of the aggrieved party" (National Association of Radiation Survivors v. Turnage(ND Cal 1987)115 FRD 543).

//

//

1  fn8) Subdivision (a) of Federal Rule of Appellate Procedure 23, "Custody or Release of a Prisoner in a Habeas Corpus Proceeding" provides:

2  ..."Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the

3  prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice,

4  or judge rendering the decision under review may authorize the transfer and substitute the sucessor custodian as a party"...Id.

5

6  While federal district courts retain jurisdiction to issue orders regarding custody of a petitioner during pendancy or review of habeas corpus (Franklin v. Duncan(ND Cal 1995)891 F.Supp 516), the powere to do so is derived from the court's power to issue the writ of habeas corpus itself

7  (Marino v. Vasquez(C.A.9 1987)812 F.2d 499) and FRAP 23 (Id., 812 F.2d at 507; Lands v. Deeds(C.A.9 1989)878 F.2d 318).

8  Warden Ken Clark at CSATF/SP did not make application to transfer the Plaintiff in accordance with FRAP in this Court (C07-1448 MJJ), nor has the state provided testimony as to why it was

9  necessary to do so. The plaintiff has been severely prejudiced by the transfer, insofar as the spoliation of evidence has removed Plaintiff's abililty to defend against all claims in this court.

10

11  fn9) Because the Plaintiff was unaware of the name of the Warden at SQSP, this Court was unable to issue a summons for Warden Ayers. Plaintiff respectfully requests that Defendants Ayers and

12  S.Mendonca are served with summons and complaint by the US Marshals, in accordance with FRCP 4, in order for those party to have opportunity to defend against the claims of the Plaintiff in this

13  action.

14  fn10) In a study on discipline within prisons, it has been reported that "jailhouse lawyers" are the most frequently disciplined segment of the prison population (see Mark Hamm, Therese Coupez,

15  et al, The Myth of Humane Imprisonment: A Critical Analysis of Severe Discipline in Maximum Security Prisons, 1945-1990).

16

17

18  – – – – – – – – – –END OF FOOTNOTES– – – – – – – – – –

19

20  Declaration

21  Plaintif, Francois P. Givens, does hereby declare under penalty of perjury by the laws of

22  the United States that all information presented in this declaration, request for summary judgment,

23  and exhibits submitted in support thereof is, to the best of his knowledge, TRUE and ACCURATE.

24  1) The boxes of legal materials which the Plaintiff was required to send home on 11–16–07 contained, inter alia, Appendix "B" for this request, the complaint submitted by Sonnie J. Franklin

25  to the Offfice of the Attorney General on 8–17–06, with the 9–21–06 and 10–2–06 responses to the complaint by CDCR and the Attorney General, respectively. On  12-19  ,2007, Plaintiff requested

26  that Ms Franklin provide this Court as well as the Attorney General with copies of the documents which comprise pages 15 – 31 of Volume 1 of the Appendix for this request.

27

28  //
Request For Summary Judgment          – 17 of 18 –
ND Cal C07–3575 MJJ

1    2) Plaintiff's father, Edmond W. Givens, did personally call both Deputy Attorney General Michele
Swanson and Deputy Attorney General D.Robert Duncan in order to alert the State of California of
2    the pending spoliation of evidence in C07-1448 and this case, before the spoliation actually occured.
There was no response by either attorney as to why CDCR decided not to allow the Plaintiff to store
3    the remainder of his legal supplies after the Defendants demanded a jury trial in this action.
Edmond Givens is in the process of initiating litigation against CDCR in state court proceedings
4    for the emotional distress that CDCR's death threats and other behavior has caused the Plaintiff's
family.

5

6    SWORN TRUE ON THIS 15ᵗʰ DAY OF _May_____, 2008 IN NORCO, CALIFORNIA.

7                                                      X _____

8                                                      Francois P. Givens,#T-86266
                                                       Plaintiff, In Pro Se.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Re-Notice/Request For Summary Judgment     - 18 of 18 -
     ND Cal C07-3575 MHP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

GIVENS v. TILTON, et al.,
C07-3575 MHP (PR)

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify under penalty of perjury by the laws of the United States that all information presented in this certificate of service is to the best of his knowledge, TRUE and ACCURATE.

I am an adult citizen of the United States, currently incarcerated at the CRC in Norco, Ca. On this day, I did personally place either original or exact copies of the following document:

a) Re-Notice of request for summary judgment by plaintiff

in envelopes with sufficient postage, addressed as follows:

1) Office of the Clerk
   US District Court(ND Cal)
   450 Golden Gate Ave.
   San Francisco, Ca., 94102

2) Office of the Attorney General
   D.Robert Duncan – D.A.G
   455 Golden Gate Ave., Suite#11000
   San FRancisco, Ca., 94102

These envelopes were given to a correctional officer to log and process as outgoing legal mail in accordance with institutional mail procedures at CRC, on this day.

SWORN TRUE ON THIS 18th DAY OF May , 2008 IN NORCO, CALIFORNIA.

X _____
Francois P. Givens,#T-86266
CRC
P.O. Box 3535
Norco, Ca., 92860
Plaintiff, In Pro Se.

Certificate of Service/Re-Notice of Request For Summary Judgment    – iv –
ND Cal C07-3575 MHP

May 18, 2008

    To: Office of the Clerk
        US District Court (ND Cal)
        450 Golden Gate Ave.
        San Francisco, Ca., 94102
    Re: Filings For C07-1448 MHP and C07-3575 MHP

Clerk of the Court:

    Please file the enclosed Re-notice of request for leave to conduct
discovery on habeas corpus, declaration  in support of re-notice for leave
to conduct discovery, and re-notice of request for judicial notice in Case#
C07-1448 MHP, and the re-notice of request for summary judgment by the
plaintiff in C07-3575 MHP.

Thank you,

X _____
Francois P. Givens,#T-86266
CRC
P.O. Box 3535
Norco, Ca., 92860

Francois P. Givens # T-86266
CRC 408-1up
P.O. Box 7655
Norco, Ca, 92860

"Confidential Legal Mail"

11 27 MAY 20 2008 PM SANTA ANA CA

Office of the Clerk
US District Court (ND Cal)
450 Golden Gate Ave.
San Francisco, Ca, 94102



